476 A.2d 34

**COMMONWEALTH of Pennsylvania**

v.

**Robert DAVID, Appellant.**

Superior Court of Pennsylvania.

Submitted May 13, 1983.

Filed April 19, 1984.

442

Jonathan Blum, Assistant Public Defender, Wilkes-Barre, for appellant.

Joseph Giebus, Assistant District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before WICKERSHAM, WATKINS and MONTGOMERY, JJ.

PER CURIAM:

On April 13, 1981, appellant, Robert David, appeared before the Honorable Arthur D. Dalessandro and entered pleas of guilty to the following charges (Record 7–8):

No. 120 of 1981, Theft by Deception;
No. 121 of 1981, Forgery;
No. 122 of 1981, Theft by Deception;
No. 123 of 1981, Forgery;
No. 124 of 1981, Theft by Deception;
No. 125 of 1981, Forgery;
No. 202 of 1981, Theft by Deception;
No. 216 of 1981, Forgery.

Sentencing was set for June 2, 1981.

At the April 13, 1981 hearing, the following testimony occurred:

Mr. PODCASY: If it please the Court; your Honor, concerning criminal information No. 202 of 1981 my understanding is that on November 29, 1980, the defendant and Mr. Cupp went to the residence of one Robert Leggett at which they secured certain checks and moneys amounting to $260.00. The checks owned by Mr. Leggett were issued by the Nevada National Bank. Mr. Leggett at no time authorized the defendant to have or use the checks or to take them originally.

. . . .

MR. BLUM: Your Honor, for the purpose of clarification, on the charge on 202 of 1981 involving Mr. Cupp, [co-defendant], the reason the burglary and the criminal conspiracy are not being plead is because Mr. David was the driver of the car and did not enter the residence or apartment building. Aside from that I have no questions of the District Attorney. I would like to get a figure from the bank of what is owed.

THE COURT: I have a figure that indicates that this man has taken $11,410.00 in seven days and that a total of $1,630.00 a day was taken.

. . . .

THE COURT: The Court finds that the defendant's participation in the plea bargain agreement and the tender of guilty pleas as set forth by the Assistant District Attorney, and as verified by the Court's inquiry of the defendant, was done voluntarily, intelligently and understandingly and after consultation with trial counsel.

The Court finds that this defendant is an intelligent person who is fully aware of all of his rights and is fully aware of everything that has happened concerning his appearance in court today.

444

Guilty Plea Transcript, April 13, 1981, at 17, 19, 27.[1]

On June 2, 1981, the defendant again appeared before Judge Dalessandro, again represented by Jonathan Blum, Esquire, Assistant Public Defender. Mr. Blum informed the court that appellant wished to withdraw the guilty plea to No. 202 of 1981. After reviewing the informations and counts thereof to which appellant had pled guilty, the court denied the motion to withdraw the guilty plea:

"THE COURT: Mr. David.

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: We went through very detailed explanations and proceedings when you submitted a plea of guilty on a number of charges on April 13th, 1981. They were very thoroughly and clearly explained to you. Also, there were a number of charges that were to be nol prossed, meaning dropped. I was completely convinced that you fully understood what was taking place and that you understood what you were doing. And I stated for the record my

1. Further testimony indicated:

THE COURT: Where is the money?

THE DEFENDANT: We split and I had a ball in Nanticoke, I drank for a while. I lost money that way. I have no idea where Billie [Cupp, a co-defendant] put his.

THE COURT: You split it with the other fellow named Cupp?

THE DEFENDANT: Yes, sir.

. . . .

MR. NAGORSKI [Police Officer]: The only thing I can add, I don't think Mr. Cupp got half the money, he got a small amount of it. I think Mr. David got the larger share.

THE COURT: Were you the one that took the checks to the bank and got your hands on the checks?

THE DEFENDANT: Yes, sir.

THE COURT: Where was Mr. Cupp when you were doing that?

THE DEFENDANT: My car. He didn't get half, o.k.

THE COURT: Whose idea was it to rip off the victim and the bank here, Mr. Leggett and the bank?

THE DEFENDANT: Well, he took the checks.

THE COURT: Who thought of the idea?

THE DEFENDANT: Billie got the checks, when he got them I cashed them.

THE COURT: Whoever knew that Mr. Leggett had $11,000.00 sitting in his checking account?

THE DEFENDANT: William knew him.

Guilty Plea Transcript, April 13, 1981, at 21, 22.

conclusions as to the fact that you tendered the plea to the various charges knowingly, intelligently, voluntarily, understandingly and after consultation with Counsel. Now, Mr. Blum has stated that you want to withdraw your guilty pleas.

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: What's the basis for that?

"THE DEFENDANT: At the time of my hearing last time, I didn't know if the witnesses that I have now, that I have talked to, that can indicate that I had no part in the theft or planning of this, or burglary of the checks.

"THE COURT: There has been no guilty pleas to those charges. The guilty pleas have been to forgeries and to thefts from the bank.

"MR. BUTERA: That's correct. They were thefts by deception charges that he pled to.

"THE COURT: Yes. There has been no guilty plea to any offense concerning the unlawful taking of the checks from the owner of the checks. I'll repeat the guilty pleas to you.

"Information 121, the first count, forgery. That has nothing to do with charging you with stealing the checks from Mr. Robert W. Leggett.

"Information 122, second count, theft. That basically charges that you obtained the property of the Peoples Bank of Nanticoke, specifically $700, by deception. That doesn't charge you with stealing checks.

"Information 123, a charge of forgery.

"Information 124, a charge of theft. That you intentionally obtained or withheld property of another by deception, to wit, $1400, the property of Peoples National Bank of Nanticoke.

"Information 125 is a forgery charge.

"Information 202 is a theft charge; and 216, a forgery charge.

"Is there anything else you want to submit?

"THE DEFENDANT: No, Your Honor.

"THE COURT: Do you understand what I'm speaking of now?

"THE DEFENDANT: Yes, sir.

"THE COURT: You didn't plead guilty to stealing anything from Mr. Leggett. You entered a plea of guilty to forging his name on a check. And also you entered a plea of guilty to the various charges of obtaining property, which was money of the Peoples Bank of Nanticoke, by deception. Those are the charges to which you entered a plea of guilty.

"MR. BLUM: Excuse me, Your Honor. I believe Information 202 would be taking.

"THE COURT: Can I see 202, please.

"MR. BUTERA: Your Honor, I don't have the file on 202.

"THE COURT: 202 of '81, third count charges that you and William James Cupp, on or about November 29, 1980, did unlawfully take or exercise unlawful control over a quantity of checks and United States currency; the total value of approximately $260, the property of Robert Leggett. Is that the charge that you say that you have evidence on?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: What's the evidence that you have on that charge?

"THE DEFENDANT: Persons that have seen Mr. Cupp go into the building. Mr. Cupp admitted to two persons that he did enter the building and take money. And that he did have the key to the apartment that the checks were taken from.

"THE COURT: Are you saying to me today that although you admitted that charge on April 13th, 1981, that now you're saying to me that you had nothing whatsoever to do with that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Well, why would you have admitted it on April 13th? We described it very clearly to you. We asked you if you knew what you were doing. We asked you if you realized that by pleading guilty you would be admitting that you performed the acts that I read to you from the third count of Information 202 of '81.

"THE DEFENDANT: At the time that I pleaded guilty, Your Honor, I didn't know about the witnesses.

"THE COURT: Well, the fact that you may not have known about the witnesses doesn't seem to be connected with whether or not you did, in fact, participate in that crime. Do you follow me? In one instance you're saying you did it. Now you're saying there are witnesses who have a different story than what you, yourself, admitted. It's inconsistent.

"THE DEFENDANT: Yes, I know, Your Honor. But at the time, I didn't have any way of proving myself innocent.

"THE COURT: Well, why did you confess to that crime if you didn't do it?

"THE DEFENDANT: Because I had no way to prove that I didn't do it, Your Honor.

"THE COURT: Mr. David, that's not the way the law works and we made it very clear to you, the nature of entering a plea of guilty.

"The third count of Information 202 of '81, charges that, on or about the 29th day of November, 1980, William James Cupp and Robert David, did unlawfully take or exercise unlawful control over a quantity of checks and United States currency; a total value of approximately $260, the property of Robert Leggett, with intent to deprive him thereof.

"Did you and Mr. Cupp steal the checks and some money of Robert Leggett, on or about November 29th, 1980?

"THE DEFENDANT: No, sir, I didn't.

"THE COURT: Well, why did you say you did on April 13th, 1981?

"THE DEFENDANT: Because I didn't have any way to prove myself different. I had no way to prove to you or anyone else that I didn't do it.

"THE COURT: No. I made it very clear to you that you didn't have to prove you're innocent. That the Commonwealth has to prove beyond a reasonable doubt all of the elements of the crime charged beyond a reasonable doubt. I made that extremely clear. And you do appear to be an intelligent person who knows very well what you're doing. And I have no hesitation in arriving at that conclusion.

"Therefore, Mr. Blum, the only possible question on a withdrawal of a guilty plea would make reference to the third count of Information 202 of '81.

"MR. BLUM: That would be how I would see it, Your Honor. I don't know if Mr. David agrees with me or not.

"THE COURT: Do you understand that, Mr. David?

"THE DEFENDANT: Yes, sir.

"THE COURT: The motion to withdraw a guilty plea is denied."

Sentencing Transcript, June 2, 1981, at 2–8.

The court then sentenced appellant as follows:

On Information No. 121 of 1981, minimum of 2½ years less 1 day and a maximum of 5 years less 1 day in the Luzerne County Prison.

On Information Nos. 123, 125 and 216 of 1981, identical sentence as that on No. 121 of 1981. All sentences to run concurrent.

On Information No. 122 of 1981, placed on probation for 5 years with the Pennsylvania Board of Probation and Parole. Probation to commence at the expiration of the maximum term on the felony charges filed to Nos. 121, 123, 125 and 216 of 1981.

On Information Nos. 124 and 202 of 1981, identical sentences as that on No. 122 of 1981. All probations to run concurrent.

Appellant was given credit for time served. Appellant was also ordered to make full restitution to the victim and pay the costs of prosecution on all charges including those nol-prossed by the Court. Costs to be paid within six months.

The court inadvertently omitted the sentence on No. 120 of 1981 at the June 2, 1981 sentencing proceeding. Appellant filed a timely motion challenging the validity of the guilty plea and/or petition to modify his sentence, which motion was denied by the court without a hearing on June 17, 1981. A notice of appeal was filed on appellant's behalf, and said appeal was docketed in the Superior Court of Pennsylvania to No. 2122 Philadelphia, 1981. On May 19, 1982, appellant was sentenced on No. 120 of 1981 to a minimum of 2½ years and a maximum of 5 years to commence at the expiration of the sentence imposed on June 2, 1981 on Nos. 121, 123, 125 and 216 of 1981. The Court further changed appellant's original sentence from the Luzerne County Prison to a state correctional institution. Appellant filed a timely petition to modify sentence, which petition was denied by the court without a hearing on June 1, 1982. A notice of appeal was filed on appellant's behalf, and said appeal was docketed in the Superior Court of Pennsylvania to No. 1828 Philadelphia 1982. Appellate counsel filed a petition in this court to consolidate both of appellant's appeals because they both involved the same plea agreement, which petition was granted on August 9, 1982.

In *Commonwealth v. McLaughlin*, 469 Pa. 407, 366 A.2d 238 (1976), our supreme court pointed out that in determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice. Further, the court said:

In *Commonwealth v. Santos*, 450 Pa. 492, 494–495, 301 A.d 829, 830 (1973), we stated additional reasons for allowing liberal withdrawal of guilty pleas prior to sentencing:

"... However, since guilty pleas involve the simultaneous waiver of so many constitutional rights, ... we have recently emphasized 'that a request [to withdraw] made before sentencing ... should be liberally allowed.' *Commonwealth v. Forbes*, 450 Pa. 185, 190, 299 A.2d 268, 271 (1973).

"The trial courts in exercising their discretion must recognize that ' "[b]efore judgment, the courts should show solicitude for a defendant who wishes to undo a waiver of all the constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our Constitution." ' *Commonwealth v. Neely*, 449 Pa. 3, 6, 295 A.2d 75, 76 (1972) [concurring opinion, quoting *Dukes v. Warden, Connecticut State Prison*, 406 U.S. 250, 258, 92 S.Ct. 1551 [1555] 32 L.Ed.2d 45 (1972) (concurring opinion) ]."

In *Commonwealth v. Morales*, 452 Pa. 53, 54–55, 305 A.2d 11, 13 (1973), this court, in further defining the conditions which would allow withdrawal of a guilty plea, stated:

"Although the court based its decision to refuse appellant's motion to withdraw his guilty plea on a finding that appellant's claim that he did not fully understand the nature and consequences of his plea was not to be believed, this would not in itself be controlling on the issue of whether to permit the withdrawal of a guilty plea before sentencing in the absence of a showing of prejudice. As we said in *Santos*, supra: *'A trial court, [in presentence situations], abuses its discretion by not allowing a guilty plea to be freely withdrawn prior to sentencing when the Commonwealth would not be sustantially prejudiced by the plea withdrawal.'* [450 Pa.] At page 496, 301 A.2d at page 831." (Emphasis supplied.)

See also *Commonwealth v. Starr*, 450 Pa. 485, 489, 301 A.2d 592, 594.

A review of the above authorities indicates that the existence of substantial prejudice to the Commonwealth is

the crucial factor in determining whether to allow a presentence withdrawal of a guilty plea. In the instant case, we are of the opinion that the trial court erred in not allowing a presentence withdrawal of appellant's guilty plea.

*Id.* 469 Pa. at 411–13, 469 A.2d at 240–41.

Applying the *McLaughlin* test to the above case we find no evidence from the record that would indicate that the Commonwealth would have been substantially prejudiced by the plea withdrawal.

As we recently said in *Commonwealth v. Dickter*, 318 Pa.Super. 372, 465 A.2d 1 (1983):

> Although appellant's petition was presented four years after he entered the pleas, it was nonetheless filed prior to the imposition of sentence. Pa.R.Crim. Procedure 320 provides:
>
> > At any time before sentence, the court may, in its discretion, permit or direct a plea of guilty to be withdrawn and a plea of not guilty substituted.
>
> Our Supreme Court recently discussed the standard to be employed in reviewing petitions to withdraw pleas that are presented prior to sentence. In *Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (1982), the court wrote:
>
> > The standard for allowing withdrawal of a guilty plea *prior to sentence* was articulated in *Commonwealth v. Forbes*, 450 Pa. 185, 191, 299 A.2d 268, 271 (1973) wherein we quoted with approval the following:
> >
> > > *"Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's pleas."* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty
> > > . . . .
> >
> > (Emphasis in original.) Because the plea involves the simultaneous waiver of so many constitutional rights, a request to withdraw prior to sentencing is "liberally allowed." *Id.* [450 Pa.] at 190, 299 A.2d at 271; *see also*

*Commonwealth v. McLaughlin,* 469 Pa. 407, 366 A.2d 238 (1976).

See *Forbes, supra,* 450 Pa. at 191, 299 A.2d at 271 (the test to be applied by trial courts is fairness and justice).

In *Commonwealth v. Mosley,* 283 Pa.Super. 28, 31, 423 A.2d 427, 428 (1980), we explained,

> While a pre-sentence withdrawal request should be liberally considered, defendant must present a fair and just reason for withdrawing the plea. Even if a viable reason is asserted for withdrawal, withdrawal is only permitted if the Commonwealth has not been substantially prejudiced by reliance on the plea.

*Id.,* 318 Pa.Superior Ct. at 375, 465 A.2d at 2.

In the *Dickter* case, the lower court's refusal to permit the withdrawal of a guilty plea was affirmed by our court because substantial prejudice to the Commonwealth was demonstrated on the record had the withdrawal been permitted. It was pointed out that although the withdrawal request was made prior to sentencing, it was made four and one-half years after the plea was entered. The delay was caused by appellant's unlawful flight. The crimes were committed against young boys whose ability to testify accurately would assumably be substantially diminished after the passage of so long a period. In the case *sub judice,* we have no evidence whatsoever of any prejudice to the Commonwealth.

Accordingly, the trial court abused its discretion by not allowing the guilty plea (to No. 202 of 1981 charging theft) to be freely withdrawn prior to sentencing.[2] Accord-

---

2. In this appeal appellant raises the following issues:

I. Whether the sentences imposed by the lower court are so manifestly excessive as a result of the court's failure to give adequate weight and consideration to the following:

A) The defendant did not contemplate that his conduct would cause serious harm.

B) The defendant's conduct did not cause serious harm.

C) The defendant is likely to respond affirmatively to probationary treatment.

D) Lengthy confinement of the defendant would cause excessive hardship.

ingly, the judgment of sentence is reversed and the case is remanded with instructions to allow appellant to withdraw his guilty plea to No. 202 of 1981 charging theft. The court will then re-sentence appellant on the remaining uncontested guilty pleas.[3] Jurisdiction is relinquished.

II. Whether the lower court should have allowed the defendant to withdraw his guilty plea on some of the counts prior to sentencing.

 III. Whether the judge should have sentenced the defendant or allowed another judge to sentence.

Brief for Appellant at 2.

Due to our treatment of the second issue raised in this appeal, we deem it unnecessary to consider the first issue raised herein. We have directed that defendant be sentenced anew on all charges to which he pled guilty and which are not contested in this appeal. There is no merit whatsoever to the third issue raised by appellant.

**3.** We have no way of knowing what effect the guilty plea at No. 202 of 1981 had on the sentences handed down on June 2, 1981 and May 19, 1982.