J-A30019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MELVIN REED | |
| Appellant | No. 2625 EDA 2013 |

Appeal from the Judgment of Sentence July 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010275-2011

BEFORE: LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY MUNDY, J.: **FILED DECEMBER 31, 2014**

Appellant, Melvin Reed, appeals from the July 8, 2013 aggregate judgment of sentence of 25 to 50 years' imprisonment following his negotiated guilty plea to third-degree murder, firearms not to be carried without a license, and possession of an instrument of crime (PIC).[1] After careful review, we affirm.

The trial court summarized the relevant facts of this case as follows.

> The incident took place on April 18th of 2011 at approximately 6:40 p.m. at the location of 6600 North Gratz Street in the City and County of Philadelphia. On that day, the decedent, Alfred Williams, Junior, was 22 years old. He was dropped

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 6106, and 907, respectively.

off at that location by his boss whom he had worked for that day. He was unarmed and went into the convenience store at that location. There is video surveillance of that convenience store, that identifies [Appellant] and the victim being at that location at the same time and also surveillance footage of the outside of the convenience store that identifies [Appellant] at that location at the time of the murder.

There are three (3) eyewitnesses that identify [Appellant] by description and clothing, height[,] and[] weight. They identify him as wearing a black hoodie with black pants with red stripes down the side. Each would testify that they witnessed the murder.

Shortly before the murder, they observed the decedent, Mr. Williams, speaking to a number of Jehovah's Witnesses. As he ended that conversation, he interacted with [Appellant]. There were some words exchanged and [Appellant] pulled out a gun and shot him numerous times. All three (3) of those witnesses identified [Appellant] through photo arrays and also in the video surveillance.

The Commonwealth would have presented Dr. Edwin Lieberman with the following findings:

Mr. Williams[] suffered a gunshot wound to the back of the neck, a grazing gunshot wound to the back of the left trapezius, a perforating gunshot wound to the back of the left shoulder girdle, a penetrating gunshot wound to the anterior mid-neck with recovery of a bullet from T1 severed cord at C6-7 with recovery of a small[-]sized bullet jacket from TI, also a penetrating gunshot wound to the left lateral chest wall. His heart, lung and aorta were penetrated by the bullet. There was recovery of a small[-]sized jacketed bullet in the right armpit. All of these shots were fired from an indeterminate range. The cause of death was multiple gunshot wounds to the head, neck and chest. There were

five gunshot wounds in this particular case. The manner of death was homicide.

The decedent expired with the pamphlet from the Jehovah's Witnesses in his hand. He was pronounced dead on the scene.

[Appellant] was brought in on April 19, 2011 to Homicide. He decided at the time he did not wish to give a statement. He was released.

On May 12th of 2011, [Appellant] was arrested for an unrelated incident on that same block, and was taken to Homicide. At that time[,] he gave a statement admitting he shot the decedent. He claimed that he was selling drugs to the decedent and the decedent pulled a gun on him. He wrestled the gun from him and shot him.

The Commonwealth would have presented physical evidence to the contrary to disprove [Appellant's] statement. A search warrant was executed on [Appellant's] house where police recovered a black hoodie and black sweatpants with red stripes down the side. Although the surveillance video did not capture the shooting itself, the three (3) eyewitnesses knew [Appellant]. One of those witnesses would also testify that he received a phone call from [Appellant], wherein [Appellant] thought the decedent was the person that broke into his house while he was in juvenile custody and that he was going to roll on him or confront him in some way.

Trial Court Opinion, 5/14/14, at 2-3. On July 8, 2013, Appellant entered into a negotiated guilty plea. He pled guilty to third-degree murder, firearms not to be carried without a license, and PIC. In return, the Commonwealth agreed not to proceed against him on charges of first-degree murder or second-degree murder. Immediately following the plea colloquy,

the trial court sentenced him in accordance with the plea agreement to 20 to 40 years' imprisonment for the third-degree murder conviction, two and one-half to five years' imprisonment for the firearms not to be carried without a license conviction, and two and one-half to five years' imprisonment for the PIC conviction. The trial court specified that all sentences were to run consecutively, for an aggregate of 25 to 50 years' imprisonment. On July 15, 2013, Appellant filed a *pro se* motion to withdraw his guilty plea, which the trial court denied following a hearing on September 6, 2013.[2] Thereafter, on September 26, 2013, Appellant timely filed the instant appeal.[3]

_____

[2] Trial counsel represented Appellant at the September 6, 2013 hearing. At the conclusion of the hearing, trial counsel indicated, "Judge, I think for the purposes of any possible appeals, [Appellant] just made an allegation of ineffective assistance of [c]ounsel. So I would ask your Honor to appoint [c]ounsel." N.T., 9/6/13, at 5. The trial court agreed and appointed new counsel to Appellant for purposes of this appeal.

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925. Additionally, we note that Appellant was represented by trial counsel when he filed his *pro se* motion to withdraw the guilty plea. If Appellant's *pro se* motion is a legal nullity, it cannot toll the appeal period for Pennsylvania Rule of Criminal Procedure 720 or Pennsylvania Rule of Appellate Procedure Rule 903 purposes. **See Commonwealth v. Ellis**, 626 A.2d 1137, 1138 (Pa. 1993) (concluding there is no right to hybrid representation where a defendant represents himself while simultaneously represented by counsel); **Commonwealth v. Patterson**, 940 A.2d 493 (Pa. Super. 2007), *appeal denied*, 960 A.2d 838 (Pa. 2008) (holding this Court may *sua sponte* raise jurisdictional issues). Pennsylvania Rule of Criminal Procedure 576(A)(4) requires the clerk of courts to accept a *pro se* submission from a represented defendant for filing, time stamp it, create a docket entry, place it in the file, and send a copy of the time-stamped document to counsel of record. *(Footnote Continued Next Page)*

On appeal, Appellant raises the following issue for our review.

> I.  Were the [A]ppellant's guilty pleas knowing[,] intelligent[,] and voluntary?

Appellant's Brief at 2.

"When an appellant enters a guilty plea, [he] waives [his] right to challenge on appeal all non-jurisdictional defects except the legality of [his] sentence and the validity of [his] plea." ***Commonwealth v. Pantalion***, 957 A.2d 1267, 1271 (Pa. Super. 2008) (citation and internal quotation marks omitted).  The decision to grant a motion to withdraw a guilty plea lies in the sound discretion of the trial court.  ***Commonwealth v. Muhammad***, 794 A.2d 378, 382 (Pa. Super. 2002).  After sentencing, a defendant can withdraw his guilty plea only upon a "showing of prejudice on the order of manifest injustice."  ***Id.*** at 383.  "[A] manifest injustice occurs when a plea

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Pa.R.Crim.P. 576(A)(4).  In this case, Rule 576(A)(4) was not complied with, as there is no indication that a copy of the *pro se* motion was forwarded to Appellant's counsel.  Nevertheless, the trial court scheduled a hearing on the motion, Appellant's counsel apparently received notice of the hearing, and he represented Appellant at the hearing.  At the hearing, the trial court disposed of the motion on its merits and later prepared an opinion in support of its decision.  Under these circumstances, we conclude that the actions of the trial court and Appellant's trial counsel perfected the post-sentence motion.  ***See Commonwealth v. Rojas***, 874 A.2d 638, 643 (Pa. Super. 2005) (rejecting the argument that counseled appellant's *pro se* post-sentence motions were a nullity and concluding said motions tolled the appeal period under Rule 720); ***cf. Commonwealth v. Cooper***, 27 A.3d 994, 1007 (Pa. 2011) (concluding *pro se* notice of appeal, filed before timely counseled post-sentence motions, is not automatically a legal nullity, but a premature appeal that was perfected upon the trial court's disposition of counseled post-sentence motions).  Therefore, we will review the merits of Appellant's issue.

is not tendered knowingly, intelligently, voluntarily, and understandingly." ***Commonwealth v. Gunter***, 771 A.2d 767, 771 (Pa. 2001).

These standards avoid allowing the defendant to use a plea to test the severity of the punishment, withdrawing it when the sentence is unexpectedly harsh. ***Commonwealth v. Shaffer***, 446 A.2d 591, 593 (Pa. 1982). Accordingly, disappointment in the length of the sentence imposed after a guilty plea does not rise to the level of manifest injustice as long as the plea is knowing, intelligent, and voluntary. ***Muhammad***, ***supra*** at 383. Following sentencing on a negotiated guilty plea, the defendant may, however, withdraw his plea if the trial court imposes a sentence in excess of the bargained-for sentence. ***Commonwealth v. Tann***, 79 A.3d 1130, 1133 (Pa. Super. 2013), *citing* ***Commonwealth v. Wallace***, 870 A.2d 838, 843 n.5 (Pa. 2005); Pa.R.Crim.P. 591(A).

To determine whether Appellant's guilty plea was knowing, intelligent, and voluntary, we must examine the totality of the circumstances surrounding the guilty plea, including the colloquy. "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." ***Commonwealth v. Yeomans***, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citation omitted).

Here, Appellant contends that the trial court erred in denying his post-sentence motion to withdraw his negotiated guilty plea because it was not knowing, intelligent, or voluntary, as he believed the sentencing court would

- 6 -

mitigate the sentence below 20 to 40 years' imprisonment. Appellant's Brief at 7. He also contends that he thought the sentences on the PIC and the firearms not to be carried without a license offenses were to run concurrent to each other and the murder offense, not consecutive. *Id.* The record belies these assertions.

After examining the certified record, we conclude that the trial court imposed the exact agreed-upon sentence of 25 to 50 years' imprisonment. The written guilty plea colloquy provides, "[t]here is no plea bargain of any kind, except that the District Attorney promised to: Recommend a sentence of not more than 25 to 50 years…. Drop [] all remaining charges. … [I]f the judge does not agree with the plea bargain or agreement, I can withdraw my guilty plea …." Written Guilty Plea Colloquy, 7/8/13, at 1. The trial court, in the oral guilty plea colloquy, advised Appellant that in exchange for his guilty plea to third-degree murder, the Commonwealth would not pursue the charges of first-degree murder or second-degree murder. N.T., 7/8/13, at 21. The trial court explained the agreed terms of the negotiated guilty plea in the following exchange.

> **THE COURT**: You are entering into a negotiated guilty plea. What that means is that the District Attorney and your attorney agreed as to what your sentence should be. I don't have to go along with that agreement but if I don't, you have the right to just go forward with the jury trial, do you understand that, or to withdraw your plea and go before another Judge, if I allowed that.
>
> Do you understand that?

**THE DEFENDANT**:  Yes.

**THE COURT**:  The agreement in your case is that in exchange for your plea to murder of the third degree, you will receive a sentence of 20 to 40 years['] incarceration.  On the charge of Violation of the Uniform Firearms Act, you will receive a sentence of 2-and-a-half to 5 years to run consecutively, that means that that starts after the 20 years is up and on the possession of an instrument of crime, 2-and-a-half to 5 years to run consecutively meaning that starts after the 2-and-a-half years on the gun charge is up, for a total sentence of 25 to 50 years.

Do you understand that?

**THE DEFENDANT**:  Yes.

**THE COURT**:  Other than what I have just told you, did anyone promise you anything in order to get you to plead guilty, other than the 25 to 50?

**MR. SEAY**[, Appellant's counsel]:  The Commonwealth agreed for it to run concurrently with the sentence he is now serving.

**THE COURT**:  This is an agreement that this sentence is to run concurrently to the sentence you are serving, any sentence now serving.

Did anyone promise you anything other than that, plus what I just told you?

**THE DEFENDANT**:  No.

…

**THE COURT**:  Knowing everything now that I have just explained to you about how you have the right to have a trial and that you can pick a jury -- we have a panel outside -- do you still want to plead guilty?

**THE DEFENDANT**:  Yes.

**THE COURT**:  I find the entry of the plea knowing, intelligent and voluntary.

N.T., 7/8/13, at 22-24.

Contrary to Appellant's assertion, the parties agreed in the written plea agreement to a sentence of not more than 25 to 50 years' imprisonment, on the record Appellant acknowledged that this aggregate sentence of 25 to 50 years' imprisonment was a result of the sentences for his three charges running consecutively, and he agreed to his three sentences running consecutively.  Moreover, there is no indication in the oral guilty plea colloquy that the trial court would mitigate the sentence to less than 20 to 40 years' incarceration.  It is clear that Appellant and the Commonwealth agreed that Appellant's sentence would be 25 to 50 years' imprisonment, which is the sentence the trial court imposed.  Additionally, in the oral guilty plea colloquy, the trial court explicitly explained that all three of Appellant's sentences in this case would run consecutively to each other and concurrent to any other sentences Appellant was currently serving, and Appellant agreed to that sentence.  While Appellant may now be disappointed that he agreed to said sentence, it is clear that the plea was knowing, intelligent, and voluntary and the sentence imposed was not in excess of the bargained-for sentence.  ***See Muhammad***, ***supra***; ***Gunter***, ***supra***; ***Tann***, ***supra***.

- 9 -

Based on the foregoing, we agree with the trial court's finding that Appellant entered into a valid negotiated guilty plea and has not made a showing of manifest injustice. ***See Muhammad***, ***supra***. Accordingly, the trial court's July 8, 2013 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/31/2014