446 A.2d 591

COMMONWEALTH of Pennsylvania, Appellee,

v.

Daniel Lee SHAFFER, a/k/a Daniel L. Shaffer, Appellant.

Supreme Court of Pennsylvania.

Submitted March 4, 1982.

Decided June 17, 1982.

John H. Corbett, Jr., Paulette J. Balogh, Asst. Public Defenders, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy Dist. Atty., Kathryn L. Simpson, Kemal Alexander Mericli, Asst. Dist. Attys., Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Daniel Lee Shaffer appeals from denial of a petition to withdraw pleas of guilty to murder of the third degree, carrying a firearm without a license and committing a crime with a firearm, Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 P.S. §§ 2502(c), 6106 and 6103 respectively. Appellant is serving a sentence of ten to twenty years for murder of the third degree, and two-and-a-

half to five years on each of the firearms violations, each sentence to run consecutively.

In January, 1975, appellant was indicted by grand jury for murder of the first degree, voluntary manslaughter, carrying a firearm without a license and committing a crime with a firearm in the shooting death of his ex-girlfriend Antonia Bougher on December 22, 1974. Prior to trial there was an attempt by defense counsel and the office of the district attorney to reach a plea bargain on the case. The district attorney sought a plea of guilty to murder of the third degree and to one count of each of the firearms violations in return for a sentence recommendation of fifteen to thirty years on all charges while appellant sought a sentence recommendation of ten to twenty years on all charges. Because they were unable to reach an agreement on the sentence, appellant entered a plea of not guilty and waived his right to a jury trial, electing instead to be tried by a judge. Trial commenced the same day, July 14, 1975.

The Commonwealth produced overwhelming evidence of guilt of murder of the first degree and the firearms violations. Testimony established that the appellant, after rendering the victim's car inoperable by dismantling the distributor, waited for her to leave a girlfriend's home. He then shot her twice with a .357 Magnum which he was unlicensed to carry. As she lay wounded, he removed from her purse a .22 caliber Derringer he had given her and shot her with it, at close range, three times in the head, killing her instantaneously. He was apprehended immediately and detained until taken into police custody. At trial, several eyewitnesses who knew appellant testified to his prior repeated statements that he would "have to kill her" or that he was "going to kill her."

On the second day of trial, after the Commonwealth rested its case and the defense called two witnesses, the appellant, pursuant to an agreement with the district attorney, requested the court's permission to withdraw his plea of not guilty and to enter a plea of guilty to murder of the third degree, carrying a firearm without a license and com-

mitting a crime with a firearm. The court permitted withdrawal of the prior plea and conducted a colloquy to determine the voluntariness of the tendered plea, which was accepted. The court, however, did not explain to appellant the elements of the crimes to which the guilty plea was entered. Appellant was sentenced in accordance with the agreement with the district attorney, the same offer made to appellant before trial. Appellant filed a Petition for Reduction of Sentence which was denied by the sentencing judge on January 16, 1976. No appeal was taken. On April 11, 1979, appellant filed a *pro se* Petition to Withdraw Plea of Guilty. After hearing and argument, where petitioner was represented by counsel, the court denied the relief requested. This appeal followed.[1]

Appellant's sole contention is that, because the on-the-record colloquy preceding the trial court's acceptance of the plea did not satisfy the mandate of *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974) (herein *Ingram*) that the court explain to the defendant the elements of the crimes on the record during a plea colloquy, the conviction entered must be reversed and a new trial ordered. It is conceded that the colloquy was adequate in all other respects.

■ In considering whether the lower court abused its discretion in not permitting withdrawal of the plea it must be emphasized that there is an important distinction between presentencing attempts to withdraw a guilty plea and post-sentencing attempts. The standard for allowing withdrawal of a guilty plea *prior to sentence* was articulated in *Commonwealth v. Forbes*, 450 Pa. 185, 191, 299 A.2d 268, 271 (1973) wherein we quoted with approval the following:

> "*Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.*" ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty . . . .

---

1. Appellant has raised no challenge to the propriety of the sentence on this appeal.

(Emphasis in original.) Because the plea involves the simultaneous waiver of so many constitutional rights, a request to withdraw prior to sentencing is "liberally allowed." *Id.*, 450 Pa. at 190, 299 A.2d at 271; *see also, Commonwealth v. McLaughlin*, 469 Pa. 407, 366 A.2d 238 (1976).

When considering a petition to withdraw a guilty plea submitted to a trial court *after sentencing*, however, it is well-established that "a showing of prejudice on the order of manifest injustice," *Commonwealth v. Starr*, 450 Pa. 485, 490, 301 A.2d 592, 595 (1973), is required before withdrawal is properly justified. *See also, Commonwealth v. May*, 485 Pa. 371, 402 A.2d 1008 (1979); *Commonwealth v. Rosmon*, 477 Pa. 540, 384 A.2d 1221 (1978); *Commonwealth v. Riggins*, 474 Pa. 507, 378 A.2d 1229 (1977); American Bar Association Standards for Criminal Justice, Pleas of Guilty, Standard 14–2.1 (2d ed. 1980). Post-sentencing attempts to withdraw a guilty plea must sustain this more substantial burden because of the recognition that a plea withdrawal can be used as a sentence-testing device. *Commonwealth v. Starr*, 450 Pa. at 489, 301 A.2d at 594 (1973). If a plea of guilty could be retracted with ease after sentencing, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe.

■ Certain of the American Bar Association Standards for Criminal Justice, Pleas of Guilty, have been adopted by this Court in the past. *See Commonwealth v. Starr, supra* (petitioner must show "manifest injustice" in attempting to withdraw plea after sentencing); *Commonwealth v. Forbes, supra*, (petitioner must show "fair and just" reason in attempting to withdraw plea before sentencing). The Standards Relating to Pleas of Guilty (2d ed. 1980), Standard 14–2.1(b)(ii)(C) relating to Withdrawal of Pleas, provides that manifest injustice exists where "the plea was involuntary, or was entered without knowledge of the charge."[2] In

2. Standard 14–2.1(b)(ii) provides:
   (ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves, for example, that:

accord with this suggested standard, some demonstration must be made that the plea was *not voluntary* or that the plea was entered *without knowledge of the charge* such that refusing to allow the petitioner to withdraw his plea would amount to a manifest injustice. Appellant has made no such showing; indeed, he has never contended that the plea was involuntary or made without knowledge of the charges but has charged only that because no rote recitation of the legal elements of the crimes was made to him on the record the plea is invalid.[3] For this oversight, the defendant now

> (A) the defendant was denied the effective assistance of counsel guaranteed by constitution, statute, or rule;
>
> (B) the plea was not entered or ratified by the defendant or a person authorized to so act in the defendant's behalf;
>
> (C) *the plea was involuntary, or was entered without knowledge of the charge* or knowledge that the sentence actually imposed could be imposed;
>
> (D) the defendant did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement; or
>
> (E) the defendant did not receive the charge or sentence concessions contemplated by the plea agreement, which was either tentatively or fully concurred in by the court, and the defendant did not affirm the plea after being advised that the court no longer concurred and after being called upon to either affirm or withdraw the plea; or
>
> (F) the guilty plea was entered upon the express condition, approved by the judge, that the plea could be withdrawn if the charge or sentence concessions were subsequently rejected by the court.
>
> American Bar Association Standards for Criminal Justice, Pleas of Guilty (2d ed. 1980) (emphasis supplied).

3. There is some evidence that dissatisfaction with the sentence is the real motivating factor of the petitioner. In the Commonwealth's answer to appellant's petition and at the hearing below on the petition, the assistant district attorney reported a telephone contact with appellant. The following was reported to the judge at the hearing:

> On the 6th of April, 1979, last year, I received a telephone call from this defendant. That was the first contact I had with him or with anybody representing him. And in this conversation he indicated he wanted to withdraw his plea. He also indicated to me that he wanted to withdraw his plea so that he could thereafter enter a plea to First Degree Murder and have the death penalty inflicted upon him. I indicated to him that that was not possible. He indicated in the conversation that he had four years of very hard time and he didn't want to do any more time.

requests a reversal and another trial, all to be accomplished, it is argued, notwithstanding the fact that he already had a trial, albeit without a verdict. The lower court, after hearing and review of the record, concluded that the petitioner failed to establish that "manifest injustice" would result if the plea were not withdrawn and denied the petition. We agree and affirm the lower court.

While this Court has often reversed convictions where a guilty plea was entered without benefit of an on-the-record explanation of the legal elements of the crimes pursuant to *Ingram, see Commonwealth v. Holmes,* 468 Pa. 409, 364 A.2d 259 (1976); *Commonwealth v. Ramos,* 468 Pa. 404, 364 A.2d 257 (1976); *Commonwealth v. Hunter,* 468 Pa. 7, 359 A.2d 785 (1976); *Commonwealth v. Schork,* 467 Pa. 248, 356 A.2d 355 (1976); *Commonwealth v. Minor,* 467 Pa. 230, 356 A.2d 346 (1976); *Commonwealth v. Dilbeck,* 466 Pa. 543, 353 A.2d 824 (1976); *Commonwealth v. Sutton,* 465 Pa. 335, 350 A.2d 793 (1976), in no such case was there the added consideration of an attempted change of plea *after* the Commonwealth had rested its case and the defense had presented its testimony. In *Commonwealth v. Morales,* 452 Pa. 53, 305 A.2d 11 (1973), however, where a defendant attempted to withdraw his plea under an assertion of innocence, not under a claimed violation of *Ingram,* this Court held that where a guilty plea is tendered after the Commonwealth has presented its case, substantial prejudice, sufficient to preclude allowance of the petition to withdraw, would inure to the Commonwealth should the defendant be permitted to withdraw his plea, 452 Pa. at 55, 305 A.2d at 13, *reaffirmed, Commonwealth v. McLaughlin,* 469 Pa. 407, 366 A.2d 238 (1976). We expressed concern, emphasized by Mr. Justice Roberts, that "appellant's actions, if allowed to succeed, might be a means of obtaining an entirely new jury for a defendant anytime he feels that the jury originally selected is not favorably disposed to his cause, even though there were no grounds for a mistrial."[4] 452 Pa. at 57, 305 A.2d at

4. The fact that a judge, rather than a jury, sat as factfinder in the instant case should not give rise to an easing of the fear of the

14. Because Morales presented the petition to withdraw before sentencing, he was subject to the liberal standard of showing any "fair and just" reason to withdraw the plea. Even though this liberal showing was applicable, this Court concluded that the prejudice to the Commonwealth was sufficient to justify denial of the petition. We see no reason why the same consideration should not be extended, *a fortiori*, to the post-sentencing situation. Strict application of *Ingram*, resulting in automatic reversal, *Commonwealth v. Dilbeck, supra*, would depart from reason in this case, by ignoring the circumstances of the entry of the plea, the obvious motives of the defendant, and the prejudice to the Commonwealth; blind adherence to a *per se* rule would not, in this case, comport with any notion of remedying a "manifest injustice." Indeed, appellant raises no allegation which rises to the level of "manifest injustice." It is not alleged that appellant entered the plea involuntarily, or without understanding the nature of the charges, or without knowledge of the factual basis for the charges, or because he was threatened or coerced, or because the prosecutor failed to recommend the bargained-for sentence, or because the bargained-for sentence was not imposed or because he is innocent.

The United States Supreme Court has never expressly held that a plea cannot be deemed knowingly and intelligently entered absent an explanation to the defendant of the elements of the crime to which he pleads guilty. In *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (herein *Henderson*), the Court indicated that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit," *Id.* at 647, 96 S.Ct. at 2258, 49 L.Ed.2d at

potential for abuse inherent in such a motion, for if appellant believed the judge was not favorably disposed after hearing the case, he may attempt to use the same vehicle of withdrawal of the plea to get another trial before a jury.

116.[5]  So also may we presume that, absent an assertion that appellant did not understand the nature of the crimes, counsel explained the nature of the offense in sufficient detail to give him notice of that which he admits by entering a plea of guilty.  The Court in *Henderson* indicated that the validity of a plea may be determined from the "totality of the circumstances" attendant upon the entry of the plea. This approach was discussed by the Court as follows:

> [The State] contends that . . . [i]nstead of testing the voluntariness of a plea by determining whether a ritualistic litany of the formal legal elements of an offense was read to the defendant, . . . the court should *examine the totality of the circumstances and determine whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused.*  We do not disagree with the thrust of [the State's] argument . . . .

*Id.* at 644, 96 S.Ct. at 2257, 49 L.Ed.2d at 114 (emphasis supplied).  The true constitutional imperative is that the defendant receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."  *Id.* at 645, 96 S.Ct. at 2257–58, 49 L.Ed.2d at 114, *quoting Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941).[6]  In the instant case, all that preceded the entry of appellant's plea served to fully and in great detail apprise him of the "nature of the charges" against him.  The salient element of murder of the third degree is malice.  *See, Commonwealth v. Thompson*, 466 Pa. 15, 351 A.2d 280 (1976).  While this term of art in the law, "malice," and its necessary presence as an

---

**5.**  In *Henderson*, because the lower court found as a fact that the element of intent was not explained to the defendant by his counsel and because of the defendant's low mental capacity, failure of the judge to explain such intent mitigated against a conclusion that the plea was entered intelligently.  No parallel exists here; appellant has raised no allegation of lack of understanding of malice.

**6.**  The rule requiring an on-the-record explanation of the elements was imposed, as stated in *Ingram*, in pursuit of satisfying the constitutional requirement of insuring, before accepting a plea of guilty, that the defendant understands the "nature of the charge," as restated in the comment to Rule 319.

element of murder of the third degree may be explained in the usual case of a guilty plea colloquy, we can think of no more vivid method of demonstrating the concept than by laying before the appellant the evidence which constitutes malice as it is defined by the law. A legal definition of the term, as it is "understood" by the legally trained, is likely to be closer to being mere words rather than a meaningfully understood explanation of that term as it operates in the law; whereas the appellant, when faced with the repeated eyewitness testimony to his premeditated and deliberate slaying of the victim, surely knew that he was pleading guilty to a serious and brutal act, committed with a hard hearted cruelty amounting to "malice."

Various goals have been cited as attainable in requiring an on-the-record colloquy preceding acceptance of a guilty plea, among them the goal of "facilitating appellate review," *Ingram*, 455 Pa. at 205, 316 A.2d at 81, *accord Boykin v. Alabama*, 395 U.S. 238 at 244, 89 S.Ct. 1709 at 1712, 23 L.Ed.2d 274 at 280. While it has been asserted that absent such an on-the-record colloquy, an appellate court is *unable* to conclude that the plea of guilty was entered voluntarily and intelligently, *Commonwealth v. Tabb*, 477 Pa. 115 at 119, 383 A.2d 849 at 851, it is obvious that in so observing, this Court cannot have intended to relinquish its traditional power to consider certain circumstances surrounding the entry of the plea, *see Commonwealth v. Morales*, 452 Pa. 53, 305 A.2d 11 (1973); *Commonwealth ex. rel West v. Rundle*, 428 Pa. 102, 237 A.2d 196 (1968); *accord Henderson v. Morgan*, 426 U.S. 637, 644, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108, 114 (1976); *accord Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 757 (1970) and instead depend fully, in each and every case, upon a *per se* requirement that the accused be read the elements of the crime in determining whether a plea was entered intelligently.

If the stated purpose for conducting a colloquy is to "demonstrate that defendant's action is taken voluntarily and intelligently," *Commonwealth v. Ingram*, 455 Pa. at 200,

316 A.2d at 78, it must be assumed that some weighing of alternatives, going to trial versus entering a plea, occurs. Why then is it paramount that the elements of a crime be explained, on the record, to the defendant? In the ordinary case, where the defendant tenders a plea of guilty from a bargaining position which is devoid of finite knowledge of the evidence available against him, concern with an explanation of the elements of the crime is of greater significance than in the case where the defendant, as here, enters the plea after the Commonwealth's case has been presented. Presumably, an explanation of the elements enables the defendant to assess the Commonwealth's ability to prove that which he is admitting in pleading guilty by comparing the elements to the evidence he knows or has reason to believe the Commonwealth has available. Thus, he determines whether the prosecution has the ability to convict should he instead choose to exercise his right to trial. In the instant case, this decision of whether to go to trial and put the Commonwealth to its proof was no longer before the appellant. Trial was accomplished and presumably the defendant knew there was sufficient evidence to convict of murder of the first degree. A decision to plead guilty to murder of the third degree, in the face of overwhelming evidence of murder of the first degree, was a decision advantageous and opportune under the immediate circumstances and motivated by self-interest.

The desire of an accused to benefit from a plea bargain which he requests his counsel to arrange has been viewed as a "strong indicator" of the voluntariness of the plea. *Commonwealth v. Lee*, 460 Pa. 324, 328, 333 A.2d 749, 750 (1975). *See also Commonwealth v. Alvarado*, 442 Pa. 516, 276 A.2d 526 (1971). Just as a defendant may decide, as a matter of strategy or expedience, to "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime," *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162, 171 (1970), *accord Commonwealth v. Jackson*, 450 Pa. 417, 299

A.2d 209 (1973); *Commonwealth v. Sampson*, 445 Pa. 558, 285 A.2d 480 (1971); *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A.2d 294 (1969), so also may a defendant, as a matter of expedience, decide to accept a plea bargain offer solely to reap some benefit from the sentence recommendation reiterated to the judge at the time of the entry of the plea. It is obvious that appellant's primary concern was length of sentence. Hence, we have great difficulty envisioning a scenario where the appellant, having benefit of an explanation of the elements of the crimes pursuant to *Ingram*, would halt the guilty plea colloquy with an assertion that these were not the crimes to which he intended to plead guilt.

We do not intend to blithely ignore the dereliction by the trial judge but we find it ironic that a rule intended to insure that a plea is entered intelligently might be invoked to invalidate a guilty plea obviously entered to secure a reduction in guilt from murder of the first degree to murder of the third degree and the sentence reduction apparent therein. After apparent satisfaction with the conviction for over four years, appellant relies upon *Ingram* in attempting to invalidate a plea of guilty which was entered at appellant's request after viewing the Commonwealth's case in chief and which was motivated by great concern over length of sentence. The trial judge, after hearing competent evidence and being empowered to find the defendant guilty of murder of the first degree, permitted him to withdraw his earlier plea of not guilty and take advantage of the plea bargain offered by the office of the district attorney. In so permitting the appellant to change his plea, the trial judge made the mistake of not explaining to the appellant the elements of murder of the third degree, including an explanation of malice, and the two firearms violations. We are, however, satisfied that appellant understood the "nature of the charges" to which he pleaded guilty.

While we do not by today's holding intend to abolish the requirement laid down in *Ingram* that the elements of

the crime must be explained on the record to the defendant prior to the acceptance of a guilty plea, it is clear that strict application of *Ingram*, under the facts of this case, would not promote the interests which *Ingram* sought to protect. Accordingly, for all of the foregoing reasons, we are of the opinion that a petitioner, who attempts, after sentencing, to withdraw a plea of guilty entered after presentation of the Commonwealth's case, has not shown manifest injustice as would necessitate a reversal where the sole alleged injustice is failure of the trial court to explain the elements of the crimes to which the petitioner entered a plea of guilty.

Judgment of sentence affirmed.

ROBERTS, J., files a concurring opinion in which O'BRIEN, C. J., and NIX, J., join.

McDERMOTT, J., joins the majority opinion and files a concurring opinion.

ROBERTS, Justice, concurring.

While I agree with the majority that appellant is not entitled to relief, I would not address the merits of appellant's claim that his plea of guilty was involuntarily entered. Appellant pled guilty on July 15, 1975, and was sentenced on September 12, 1975. Although appellant promptly petitioned the court for a reduction of sentence, he sought no other relief, by appeal or otherwise, until April 11, 1979, when he filed the present petition to withdraw his guilty plea. Appellant has failed to explain his delay of three years and seven months in filing the petition to withdraw his plea. This unexplained delay bars consideration of the merits of his claim. See *Commonwealth v. Minarik*, 493 Pa. 573, 583, 427 A.2d 623, 628–29 (1981) (Roberts, J., joined by O'Brien, C. J., and Nix, J., concurring in the judgment).

O'BRIEN, C. J., and NIX, J., join this concurring opinion.

McDERMOTT, Justice, concurring.

I concur and join the majority. I write separately to further delineate my position.

The majority discusses in great detail the various standards which apply to both pre- and post-sentencing petitions for withdrawal of guilty pleas. The essence of criminal procedure in this area, however, is the guilty plea colloquy itself, by which the voluntariness of a guilty plea is determined. This colloquy is the source of the guilty plea problem and should be the main focus of our attention. The standards by which the colloquy is judged are set forth in *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). A review of our many decisions in the guilty plea area shows that these standards have generated confusion where there should be clarity. The instant case further illustrates this point.

Defendants appealing the denial of petitions to withdraw their guilty pleas have consistently mounted two-fold attacks on the guilty plea colloquy, challenging both its content and the subjective ability of the defendant to grasp the gravity and complexity of the procedures. This course suffers from debilitating illogic.[1]

It is indisputable that a defendant must be fully aware of any rights that he purports to waive before such a waiver can be accepted. Nevertheless, as the majority points out, some credibility must be placed in the concept that defense

1. If a defendant truly fails to understand his situation where the substance of what is explained satisfies the dictates of *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974), it is the complexity of the proceedings that creates the confusion. Adding more elements to the colloquy in order to clarify the procedures for the defendant only increases the complexity which causes the confusion. Moreover, the evolving patchwork of colloquy requirements places an onerous burden of uncertainty on the trial court, and affords numerous grounds for challenges to the content of the colloquy. These attacks, all too often, are used to disguise with legalistic formalism, what is, in essence, an attempt to obtain a new trial as relief from the sting of a jail sentence.

counsel will enlighten his client as to the four elements set forth in *Ingram*. *See* Majority Opinion at 595. There is no requirement that a defendant be given what amounts to a short law school course on the nature of the charges he faces.[2] This court would do well to consider an alternative to our present appeal challenging the substance of the colloquy, leaving for our review those cases which raise valid constitutional questions. Our sister state of California has implemented one such alternative. There, in order to plead guilty, the defendant signs a written form, following a voluntariness hearing, which certifies that the waiver is made with a full understanding of all rights involved. This procedure is more efficient both in conserving the Court's time and in protecting a defendant's constitutional rights, which is its' fundamental purpose.[3]

Whether we adopt such a written form, expressly promulgate a standardized colloquy, or adopt some other alternative, the time to act is now on this situation, which cries out for a solution.[4]

2. The standard sample guilty plea colloquy used by the Court of Common Pleas of Philadelphia County covers, in its bare outline, six pages.

3. *People v. Chadd*, 28 Cal.3d 739, 170 Cal.Rptr. 798, 621 P.2d 837 (1981), *cert. denied*, 452 U.S. 931, 101 S.Ct. 3066, 69 L.Ed.2d 431 (1981); *People v. Jackson*, 28 Cal.3d 264, 168 Cal.Rptr. 603, 618 P.2d 149 (1981), *cert. denied*, 450 U.S. 1035, 101 S.Ct. 1750, 68 L.Ed.2d 232 (1981); *People v. Frierson*, 25 Cal.3d 142, 158 Cal.Rptr. 281, 599 P.2d 587 (1979); *People v. Orin*, 13 Cal.3d 937, 120 Cal.Rptr. 65, 533 P.2d 193 (1975).

4. We have examined thus far fifty-six cases, including this case, which have engaged this Court's attention concerning the guilty plea colloquy. The number of cases that have percolated before the Superior Court and the trial courts is vastly larger. The guilty plea colloquy has become almost symbolic of the worship of technicality over substance, and is, where not ridiculous, tragic.