J-S78039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ROBERT CHARLES BROWNLEE | |
| Appellant | No. 686 WDA 2016 |

Appeal from the PCRA Order April 11, 2016
in the Court of Common Pleas of Jefferson County Criminal Division
at No(s): CP-33-CR-0000004-2014

BEFORE: BENDER, P.J.E., OTT, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MAY 11, 2017**

Appellant, Robert Charles Brownlee, appeals from the order of the Jefferson County Court of Common Pleas denying his Post Conviction Relief Act[1] ("PCRA") petition. Appellant pleaded guilty to (1) one count of corruption of minors graded as a third degree felony ("felony corruption"),[2] (2) eight counts of corruption of minors graded as first degree misdemeanors ("misdemeanor corruption"),[3] and (3) one count of indecent assault—person less than thirteen years of age.[4] Appellant asserts that

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 6301(a)(1)(ii).

[3] 18 Pa.C.S. § 6301(a)(1)(i).

[4] 18 Pa.C.S. § 3126(a)(7).

guilty plea counsel ("defense counsel") was ineffective for failing to object to defects in the criminal information and guilty plea colloquy.  We affirm.

On November 19, 2013, Appellant was arrested and charged with corruption of minors and indecent exposure for exposing himself to two young girls.  The incident report, authored by a state trooper, stated in relevant part:

> I have reviewed the taped interviews of both victims. During the interview, victim 1 . . . advises that her step uncle [Appellant] would take her on walks, alone, while they were at the cabin.  During the walks he would undress and masturbate in front of her.  She advises that this happened about 3-6 times every weekend they were at the cabin from the time she was age 8 until she was 13. She said she would go to the camp on holiday weekends like Memorial Day and the Fourth of July, about 4 times a year.  She estimated that these incidents occurred a total of approximately fifty times.

R.R. 273a.[5]  Defense counsel sent a copy of the incident report to Appellant. *Id.* at 167a.

On February 21, 2014, the Commonwealth filed a 143-count information against Appellant.  On May 7, 2014, the Commonwealth filed a 151-count amended information charging Appellant with committing fifty counts of felony corruption, fifty counts of misdemeanor corruption, fifty counts of indecent assault and one count of indecent exposure "in Heat[h] Township" between May 28, 2007 and September 2, 2013.  The amended

---

[5] For the parties' convenience, we cite to the reproduced record.

information defined each count of felony and misdemeanor corruption with the same template:

> [Appellant] corrupts or tends to corrupt the morals of a minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 (relating to sexual offenses), to-wit: In that the actor did corrupt the morals of [one of the victims], while she was between the ages of [four through ten years, in the case of the first victim, or eight through thirteen years, in the case of the second victim], he would take the child on a walk and then undress in front of her and masturbate.

*Id.* at 277a. None of the felony corruption counts included the element of "course of conduct" that the legislature added to the corruption of minors statute as of December 6, 2010.[6]

---

[6] Effective December 6, 2010, the corruption of minors statute was amended to provide in relevant part:

> **(a) Offense defined.—**
>
> (1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.
>
> (ii) Whoever, being of the age of 18 years and upwards, by **any course of conduct** in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such

Prior to Appellant's guilty plea, defense counsel and Appellant watched a video recording of forensic interviews with both victims. *Id.* at 205a.

On May 7, 2014, Appellant entered an open plea of guilty to one count of felony corruption, eight counts of misdemeanor corruption and one count of indecent assault.

During the guilty plea colloquy, the trial court defined corruption of minors as follows: "For the charge of corruption of minors, the Commonwealth would have to prove beyond a reasonable doubt that . . . you engaged in some type of activity that would corrupt or tend to corrupt the morals of a person under the age of 18; and for this level of corruption, it would be of a sexual nature."[7] *Id.* at 316a. The court did not explain the difference between felony and misdemeanor corruption and did not mention the "course of conduct" element of felony corruption. *See* footnote 6, *supra*. There was also no description of the dates or times of the offenses during the colloquy. Nevertheless, defense counsel waived the reading of the facts. R.R. at 316a. The court asked Appellant whether he had

---

minor in the commission of an offense under Chapter 31 **commits a felony of the third degree**.

18 Pa.C.S. § 6301(a)(1) (emphasis added).

[7] The court also defined indecent assault as "touch[ing] or caus[ing] a minor to touch a private or intimate part of the body . . . for the purpose of sexual arousal either in [the defendant] or the minor." R.R. at 316a.

"sufficient time to review all the written facts charged against [him] with [defense counsel]." *Id.* at 317a. Appellant answered: "Yes, sir." *Id.*

At sentencing on October 23, 2014, the trial court observed that Appellant had five prior convictions for indecent exposure or indecent assault between 1980 and 1992. *Id.* at 328a. In view of Appellant's prior history, the planning that was necessary to commit the present offenses, and Appellant's lack of remorse, the court sentenced Appellant to ten consecutive terms of one to two years' imprisonment, resulting in an aggregate sentence of ten to twenty years' imprisonment. *Id.* at 368a-372a. Appellant's sentence on the felony corruption count was identical to his sentence on the nine other counts. The court also determined that Appellant was a sexually violent predator. *Id.* at 329a.

On November 3, 2014, Appellant filed post-sentence motions claiming that his sentence was excessive. On November 12, 2014, the trial court denied Appellant's post-sentence motions. Appellant did not file a direct appeal.

On November 3, 2015, Appellant timely filed a counseled PCRA petition alleging, *inter alia*, that defense counsel was ineffective for neglecting to object to (1) the Commonwealth's failure in the information and amended information to identify the dates and locations of the charged crimes with the degree of specificity necessary to enable Appellant to defend

himself, and (2) the trial court's failure to explain the elements of each offense during Appellant's guilty plea hearing.

On January 14, 2016, the PCRA court held an evidentiary hearing during which defense counsel and Appellant testified. Defense counsel testified that he received various documents in the course of his representation of Appellant, including a criminal complaint, affidavit of probable cause, incident report and information. *Id.* at 164a-169a.

Defense counsel testified that he did not see any defects in the information when he first received it. *Id.* at 169a. During the course of representation, counsel had "numerous meetings and conversation[s]" with Appellant and "discuss[ed] the corruption of minors, the whole case, basically," including the elements of this offense. *Id.* at 196a.

Defense counsel also testified that he and Appellant watched videotaped forensic interviews of the victims. Based on these interviews, defense counsel stated that "we knew that at least we were able to understand why the number of counts were charged in the complaint . . . ." *Id.* at 206a. Defense counsel added that "specific dates" were "never detailed. But we had dates of the holiday weekends on those years [when the incidents took place] because that's when the family would get together at the family camp in Jefferson County." *Id.*

Defense counsel admitted, however, that he did not describe the "course of conduct" element of felony corruption to Appellant:

Q. Now, can you tell us whether you had explained at all to [Appellant] the distinction between a felony three [c]orruption—because he pled guilty to one of those—and an M one . . . [c]orruption . . . ?

A. Can I [say] what?

Q. Whether you ever talked to him about the distinction of it. One count was graded as a felony three; the rest were graded as M one.

A. I don't want to say—I can't define the moment where I sat in front of him and talked to him. The case was sort of compressed into a relatively short amount of time, and we had numerous conversations and correspondence . . . .

Q. [R]egarding the felony three [c]orruption distinction, you were asked the question about whether you ever objected to the [c]ourt not saying during his colloquy of [Appellant], not saying to [Appellant] that it specifically requires a course of conduct. Did you see any advantage to you, or to [Appellant], to object to the [c]ourt's description of the offense at that time?

A. No. To be honest, I didn't pick up on that until this PCRA [petition] was filed against me.

*Id*. at 218-19a.

Appellant testified during the PCRA hearing that at the time of his guilty plea, he knew the identity of the victims and the fact that the charges arose from incidents at a camp in Heath Township. *Id.* at 239a. Appellant understood why the Commonwealth charged him with fifty separate incidents, but he believed the Commonwealth could prove only six such incidents. *Id.* at 239-41a. He further understood that it was risky to go to trial on all charges "in light of the environment of the [c]ourt and so on." *Id.* at 241a.

On March 9, 2016, Appellant filed a post-hearing memorandum in which he explained his theory of ineffective assistance, and the evidentiary proceedings, as follows:

The [i]nformation spanned seventy[-]six (76) months (over 2300 days) but did not identify the dates or locations of the alleged incidents. The [i]nformation did not identify the dates and locations of each incident so there was nothing in the information as a stand-alone document distinguishing one count from the other. [Defense counsel] agreed [during the evidentiary hearing] that the [i]nformation failed to include all of the elements of [the felony counts of] 18 [Pa.C.S. §] 6301(a)(1)(ii) because it failed to state the "course of conduct" element. There was no way of determining from the charging instrument that the [misdemeanor] violations of 18 [Pa.C.S. §] 6301(a)(1) were not the same crime or lesser included offenses of the violation of 18 [Pa.C.S. §] 6301(a)(1)(ii). He had no explanation for his failure to object to the trial court's omission of the "course of conduct" element during the plea colloquy. He did not discuss an alibi defense with [Appellant]. He did not challenge the charging instrument because he did not want to antagonize the prosecution. He did not want to risk a heavy sentence if convicted after a trial. He stated that the prosecution insisted on the [§] 6301(a)(1)(ii) (F3) charge "because [the prosecution] was insisting in the plea negotiations that one of the girls had put one of the incidents at issue after the date that it was enacted." He did not see any advantage to contesting the "course of conduct" element until the PCRA petition was filed. He did not review the [s]tipulated [a]mended [i]nformation with [Appellant] and he did not identify the separate instances to which [Appellant] was entering a guilty plea. He did not recall whether [Appellant] admitted to eight instances of "this conduct."

[Appellant] took the stand and testified that when he retained [defense counsel], he had not made up his mind whether to take the case to trial or negotiate a plea. He discussed an alibi defense with [defense counsel], but he could not develop it because he did not know what dates for which he would need the alibi. [Defense counsel] did

not explain the basic elements of each offense or the elemental facts the prosecution would have to prove if the case went to trial. [Defense counsel] did not investigate an alibi defense. If he had been told the [i]nformation was deficient because it did not set forth a reasonably certain date for each offense, he would not have pled guilty. He did not believe the prosecution could prove [fifty] separate instances of corruption of the morals of a minor or indecent exposure. He testified that he exposed himself six (6) times. He was concerned about taking the case to trial "in light of the environment of the [c]ourt and so on." He did not agree that he would have had a problem because of the six incidents. If the case had gone to trial, he would not have made any admissions, and he would have exposed the victims' exaggerations. He would have been able to produce alibi testimony based on the girls' whereabouts and/or his whereabouts. He would have been able to produce evidence that the girls were not where they said they were or he was not where the girls said he was and thereby establish an alibi.

Post-Hr'g Mem., 3/9/16, at 41-42 (citations omitted).

On April 11, 2016, the PCRA court entered an opinion and order denying Appellant's petition. Despite conceding that it did not mention the "course of conduct" element during the guilty plea hearing, the court determined that Appellant's claim lacked arguable merit, because he had actual notice that a "course of conduct" was part of the felony corruption count:

[Appellant] was represented from start to finish by [defense counsel], who was actively engaged with his client from start to finish. As he credibly testified, he and [Appellant] met several times and had numerous conversations between the date of the preliminary hearing and the date [Appellant] entered his guilty pleas, during which time [defense counsel] clearly explained the elements of all 151 charges. From speaking with his attorney, therefore, [Appellant] knew on [the date of his

- 9 -

guilty plea] that "course of conduct" was part of the F3 [c]orruption of [m]inors count to which he was pleading. He also knew that the victims, and the Commonwealth on their behalf, were together alleging [fifty] separate instances of the offensive conduct over a five-and-a-half–year period. Notwithstanding the [c]ourt's failure to state that the F3 entailed a course of conduct, therefore, [Appellant] was well aware prior to pleading guilty of that statutory element and the Commonwealth's evidence to prove it.

PCRA Ct. Op., 4/11/16, at 10.    The PCRA court also determined that Appellant failed to demonstrate prejudice from the failure to mention the "course of conduct" element during the guilty plea colloquy. *Id.*

Appellant filed a timely notice of appeal to this Court.  Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

1.  Whether [guilty plea] counsel was ineffective for failing to object to the trial court's violation of the Fourteenth Amendment Due Process Clause arising from the court's failure to inform [Appellant] of each and every element of a felony violation of [18 Pa.C.S. §] 6301(a)(1)(ii)?

2.   Whether [guilty plea] counsel was constitutionally ineffective for failing to object to a criminal information and stipulated amended information that failed to include all of the elements of a felony violation of [18 Pa.C.S. §] 6301(a)(1)(ii)[,]  including  the  "course  of  conduct" element[,] and failed to identify the dates and locations of the crimes with sufficient specificity to protect the federal and state constitutional right to fair notice of the charge and protect [Appellant's] right not to be punished more than once for the same crime?

Appellant's Brief at 1-2 (some capitalization omitted).

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1267 (Pa. 2008) (citation omitted). When a PCRA petitioner alleges ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) the petitioner was prejudiced by counsel's action or omission. **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." **Commonwealth v. Reed**, 42 A.3d 314, 319 (Pa. Super. 2012) (citation and quotation marks omitted), *appeal denied*, 114 A.3d 416 (Pa. 2015). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. **Commonwealth v. Simpson**, 66 A.3d 253, 260 (Pa. 2013). "The burden of proving ineffectiveness rests with [a]ppellant." **Commonwealth v. Rega**, 933 A.2d 997, 1018 (Pa. 2007) (citation omitted).

To prove ineffective assistance of defense counsel,

> the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. **See, e.g.,** [**Commonwealth v. Allen**,

- 11 -

732 A.2d 582, 587 (Pa. 1999)] ("Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea").

*Commonwealth v. Flanagan*, 854 A.2d 489, 502 (Pa. 2004) (some citations omitted). This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea. *Id.*

In his first argument, Appellant contends that the PCRA court erred by declining to find defense counsel ineffective for (1) failing to inform Appellant of the "course of conduct" element in the felony subsection of the corruption of minors statute, 18 Pa.C.S. § 6301(a)(1)(ii), and (2) failing to request the trial court to define this element during his guilty plea hearing. Appellant contends that he would not have pleaded guilty to any charges had he been informed of this element.

A valid guilty plea colloquy must delve into six areas: (1) the nature of the charges, (2) the factual basis for the plea, (3) the right to a jury trial, (4) the presumption of innocence, (5) the maximum sentencing ranges, and (6) the plea court's power to deviate from any recommended sentence. Comment, Pa.R.Crim.P. 590(A)(2); *Flanagan*, 854 A.2d at 500. A guilty plea must be knowing, voluntary and intelligent in order to be constitutional. *See Henderson v. Morgan*, 426 U.S. 637, 645 (1976).

The failure to mention an element of the charged offense during a guilty plea colloquy does not automatically invalidate the plea. The United States Supreme Court has instructed that

> [i]nstead of testing the voluntariness of a plea by determining whether a ritualistic litany of the formal legal elements of an offense was read to the defendant, . . . the court should examine the totality of the circumstances and determine whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused.

*Henderson*, 426 U.S. at 644.

Pennsylvania courts have repeatedly followed the same principle. In *Commonwealth v. Shaffer*, 446 A.2d 591 (Pa. 1982), our Supreme Court cited *Henderson's* presumption and observed: "So also may we presume that, absent an assertion that appellant did not understand the nature of the crimes, counsel explained the nature of the offense in sufficient detail to give him notice of that which he admits by entering a plea of guilty." *Shaffer*, 446 A.2d at 595. *Shaffer* noted with approval *Henderson's* directive that "the validity of a plea may be determined from the 'totality of the circumstances' attendant upon the entry of the plea." *Id.* (citing *Henderson*, 426 U.S. at 644). Justice McDermott concurred, commenting that attacks on guilty plea colloquies are "all too often . . . used to disguise with legalistic formalism, what is, in essence, an attempt to obtain a new trial as relief from the sting of a jail sentence." *Id.* at 598 n.1.

In **Commonwealth v. Gardner**, 452 A.2d 1346 (Pa. 1982), a PCHA decision entered shortly after **Shaffer**, the defendant contended that counsel was ineffective for permitting him to enter a guilty plea when the trial court neglected to inform him of his right to participate in jury selection. **Gardner**, 452 A.2d at 1346-47. Our Supreme Court examined not only the oral and written plea colloquy, but also the off-the-record communications between the defendant and counsel, to determine whether the defendant was informed of this right prior to his guilty plea. **Id.** at 1347. The defendant had not been so informed on the record, but at the evidentiary hearing on the PCHA petition, trial counsel explained that he had not objected to the guilty plea colloquy because, prior to the colloquy, he had twice informed the defendant of the right not mentioned by the trial court on the record. **Id.** Based on this record, the Supreme Court held that trial counsel did not provide ineffective assistance and affirmed the denial of PCHA relief. **Id. Gardner** makes clear that evidence other than the record of the actual plea colloquy, such as off-the-record communications between attorney and client, can be relevant to the question of whether the defendant voluntarily, knowingly, and intelligently entered his guilty plea.[8]

---

[8] **See also Commonwealth v. Fears**, 836 A.2d 52, 64 (Pa. 2003) (citation omitted) (to determine voluntariness of guilty plea, "trial court may consider a wide array of relevant evidence under this standard including, but not limited to, transcripts from other proceedings, off-the-record communications with counsel, and written plea agreements"); **Commonwealth v. Schultz**, 477 A.2d 1328, 1329 (Pa. 1984) (defendant

The "course of conduct" element of felony corruption in 18 Pa.C.S. § 6301(a)(1)(ii) "require[s] proof of] multiple acts over time" that corrupt or tend to corrupt the morals of a minor. **Commonwealth v. Kelly**, 102 A.3d 1025, 1031 (Pa. Super. 2014). To satisfy *ex post facto* requisites, at least one of these acts must occur on or after the effective date of the "course of conduct" element, December 6, 2010.[9]

could not withdraw guilty plea for robbery despite trial court's failure to inform him during his guilty plea colloquy that theft was an element of robbery, where defendant was aware of the nature of the charges based on "overwhelming" evidence outlined during guilty plea colloquy as well as fact that he had three prior robbery convictions); **Commonwealth v. Martinez**, 453 A.2d 940, 942-43 (Pa. 1982) (where defendant pled guilty to third degree murder and robbery, but there was "no recitation of the elements of the crimes" during the guilty plea colloquy, plea was voluntary and knowing because defendant was aware of nature of charges based on extensive evidence of guilt presented during the plea colloquy); **Commonwealth v. Yager**, 685 A.2d 1000, 1004-05 (Pa. Super. 1996) (although guilty plea colloquy did not inform defendant of possibility of consecutive sentences, totality of circumstances surrounding the plea demonstrated that defendant fully understood nature and consequences of his plea; defendant signed written guilty plea acknowledging that he discussed possible range of sentences with counsel, and counsel testified that he advised defendant of likelihood of consecutive sentences).

[9] Both the United States Constitution and the Pennsylvania Constitution prohibit the enactment of *ex post facto* laws. U.S. Const. Art. I, § 10; Pa. Const. Art. I, § 17. These provisions "attempt[] to preserve for persons the right to fair warning that their conduct will give rise to criminal penalties." **Commonwealth v. Kizak**, 148 A.3d 854, 857 (Pa. Super. 2016) (citations and quotation marks omitted). A law violates *ex post facto* principles when, *inter alia*, "(1) the law makes an act criminal which was not criminal when done; (2) the law aggravates a crime—one which makes it greater than it was when committed; [or] (3) the law changes a punishment, and makes it greater than it was when a punishable act was committed. . . ." **Id.** (citation omitted). "[I]n order for a criminal or penal law to be deemed an *ex post facto* law, two critical elements must be met: it must be retrospective, that

Here, defense counsel admitted during the PCRA hearing that he failed to explain the "course of conduct" element to Appellant; indeed, he did not even notice that this element was missing from the information until he received Appellant's PCRA petition. R.R. at 218-19. Moreover, the "course of conduct" element is missing from each felony corruption count in the information. During the guilty plea colloquy, the trial court did not mention the course of conduct element, and defense counsel waived the reading of the facts, which would have detailed the evidence that established Appellant's course of conduct.

Despite these omissions, Appellant admitted committing a course of conduct of sex offenses, since he acknowledged during the PCRA hearing that there were six occasions in which he exposed himself to and masturbated in front of the victims. *See Kelly*, 102 A.3d at 1031. Moreover, Appellant implicitly acknowledged that at least one of these offenses took place after December 6, 2010. Appellant admitted watching a videotape of the victims' forensic interviews prior to his guilty plea in which one victim stated that he abused her at least fifty times on holiday weekends between May 2007 and September 2013. Based on the videotape, he

---

is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* (citations and quotation marks omitted). Under these precepts, an *ex post facto* violation would occur if the Commonwealth purported to satisfy the "course of conduct" element solely with evidence of acts that took place before the effective date of this element.

admitted "under[standing] why the Commonwealth charged [him] with [at least] 50 separate incidents" of corruption of minors. R.R. at 236a, 239a. Further, defense counsel testified that he reviewed the videotape together with Appellant and also sent Appellant a copy of a police report in which one of the victims stated that he abused her when she was between ages eight and thirteen, close to the same time period as May 2007 to September 2013. Although the question is close, we conclude that the totality of these circumstances establishes that Appellant was on notice at the time of his guilty plea that at least one of the incidents in his course of sex offenses took place after December 6, 2010. For these reasons, the PCRA court correctly concluded that Appellant's first allegation of ineffective assistance of counsel lacks arguable merit.

We also agree with the PCRA court that this argument fails due to lack of prejudice. The failure to mention the course of conduct element during the guilty plea colloquy did not induce Appellant to plead guilty. Instead, the record satisfies us that he pleaded guilty to avoid the danger of going to trial. Proceeding to trial would have exposed Appellant to the risk of a guilty verdict on **151** sexual offenses—a risk that would have been exacerbated by the introduction of his five prior convictions for sexual offenses. By pleading guilty to ten offenses, including one felony corruption count, Appellant eliminated the risk of a potentially catastrophic sentence that might have arisen from the verdict.

In his second argument on appeal, Appellant maintains that defense counsel was ineffective for failing to object to the criminal information's failure to state the dates and locations of his offenses with sufficient specificity. Appellant states that the information "charges 151 separate and distinct crimes which allegedly occurred between 2007 and 2013. Without dates and locations, there was no way to tell whether or not it charged the same crime in more than one count." Appellant's Brief at 23. No relief is due on this issue.

The information must "fix the date when an alleged offense occurred with reasonable certainty." *Commonwealth v. Jette*, 818 A.2d 533, 535 (Pa. Super. 2003) (citation and quotation marks omitted). The purpose of this requirement is to provide the defendant with sufficient notice to meet the charges and prepare a defense. *Commonwealth v. Gibbons*, 784 A.2d 776, 780 n. 2 (Pa. 2001) (Saylor, J., concurring).

> However, "[d]ue process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. *Commonwealth v. Devlin*, [] 333 A.2d 888, 892 ([Pa.] 1975) . . . Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. *See* Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.

*Commonwealth v. Koehler*, 914 A.2d 427, 436 (Pa. Super. 2006) (some citations omitted). Moreover, "the Commonwealth must be afforded broad

latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." ***Commonwealth v. G.D.M., Sr.,*** 926 A.2d 984, 990 (Pa. Super. 2007) (citations omitted). This is especially true when the case involves sexual offenses against a child victim. ***Id.*** Particularly illustrative in this regard is ***Commonwealth v. Niemetz***, 422 A.2d 1369 (Pa. Super. 1980), in which the information alleged that the defendant sexually abused the minor victim "on (or about) divers[e] dates beginning in 1972 and continuing until August[] 1977." ***Id.*** at 1372. This language, we held, was satisfactory because "the Commonwealth was unable to state the dates on which the offenses occurred with any more specificity." ***Id.*** at 1373 (quotation marks omitted). We reasoned that it would be unfair "to permit a person to rape and otherwise sexually abuse his child with impunity simply because the child has failed to record in a daily diary the unfortunate details of her childhood." ***Id.***

In this case, Appellant exposed himself to the minor victims multiple times over a six-year period. Appellant himself admits that he knew the victims and engaged in this misconduct against them six times at a camp in Heath Township. Thus, as in ***Niemetz***, it would be unjust to allow Appellant to escape criminal liability for these acts merely because the minor victims did not write down the dates of the incidents.

Appellant also insists that the information's alleged lack of specificity violates his double jeopardy rights because "without dates and locations,

[the information] charged the same crime in more than one count," and therefore, Appellant could have been punished more than once for the same crime. We agree with the PCRA court that this argument is speculative:

> [T]he prejudice [Appellant] asserts is wholly theoretical. It assumes that he will, at some future date, again face criminal charges stemming from allegations that he exposed his penis and masturbated in front of [the victims] while taking walks with them between May 28, 2007 and September 2, 2013. It assumes, moreover, that the Commonwealth's failure to clarify that the incidents in this case occurred "at the family camp" in Heath Township, Jefferson County and "during Memorial Day weekends, Labor Day weekends, and one Fourth of July weekend" will make it difficult or impossible to ascertain whether the subsequent charges violate the Double Jeopardy Clause. Entirely speculative, though, this scenario cannot establish prejudice.

PCRA Ct. Op. at 9.

Order affirmed. Jurisdiction relinquished.

P.J.E. Bender joins the Memorandum.

Judge Ott Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2017