J-S38004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAYE MAURICE WYNDER | : | |
| | : | |
| Appellant | : | No. 619 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 9, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002749-2021

BEFORE: LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED NOVEMBER 7, 2023**

Taye Maurice Wynder appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Montgomery County, following his open guilty plea to: one count each of corrupt organizations,[2] criminal conspiracy—selling

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court imposed judgment of sentence on January 9, 2023. On January 18, 2023, Wynder filed a timely post-sentence motion, which was denied on January 27, 2023. Wynder's notice of appeal was filed "from the order entered in this matter on the 27th day of January 2023." **See** Notice of Appeal, 2/24/23. Thus, the appeal was erroneously filed from the January 27, 2023 order denying the post-sentence motions. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (en banc) (citation omitted) ("In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions."). We have corrected the caption accordingly.

[2] 18 Pa.C.S.A. § 911(b)(2).

firearms to an ineligible transferee,[3] resisting arrest,[4] and criminal use of a communication facility;[5] two counts of dealing in proceeds of unlawful activities;[6] and four counts each of selling firearms to an ineligible transferee[7] and persons not to possess, use, manufacture, control, sell, or transfer firearms.[8] Following his plea, the court sentenced Wynder[9] to an aggregate sentence of 12 to 24 years' imprisonment. Upon review, we affirm on the opinion authored by the Honorable Wendy G. Rothstein.

Between June 2019 and December 2020, Wynder was an active member of a gun trafficking organization that operated in various Pennsylvania counties, including Montgomery County. Wynder and several other individuals, most of whom were prohibited from purchasing firearms due to criminal backgrounds, would recruit individuals as "straw purchasers" to purchase firearms and falsify state and federal paperwork by certifying that he or she was the actual buyer of the firearm, even though the firearm would

---

[3] *Id.* at § 903(a)(1).

[4] *Id.* at § 5104.

[5] *Id.* at § 7512(a).

[6] *Id.* at § 5111(a)(2).

[7] *Id.* at § 6111.

[8] *Id.* at § 6105(a)(1).

[9] One of Wynder's co-defendants, Alexander Aaron Smith, has an unrelated appeal that is docketed at 642 EDA 2023.

be transferred to a member of the gun trafficking organization. As a result of these straw purchases, Wynder obtained at least four firearms. During his time as a member of this organization, Wynder was under the legal age to purchase a firearm in Pennsylvania and was also prohibited from possessing, using, or purchasing a firearm due to prior juvenile adjudications for robbery.

On December 12, 2020, the vehicle in which Wynder was a passenger was subject to a traffic stop by Pennsylvania State Police. During the stop, Wynder fled the vehicle. Trooper Seth Betancourt pursued Wynder on foot, ultimately apprehending him and discovering, upon patting down Wynder's person, a handgun that had been purchased by a straw purchaser utilized by Wynder four days prior.

Following Wynder's arrest, the Commonwealth charged him with 72 counts of various offenses related to the trafficking organization. Wynder filed a motion to suppress. The court held a hearing, at which Trooper Betancourt testified. On September 8, 2022, the court denied Wynder's motion to suppress.

On April 2, 2022, pursuant to 18 Pa.C.S.A. § 6111(h)(1),[10] the Commonwealth filed notice of intent to seek mandatory sentences with

---

[10] **§ 6111. Sale or transfer of firearms**

* * *

**(h) Subsequent violation penalty.—**

*(Footnote Continued Next Page)*

respect to three of the counts. Wynder did not object. On September 16, 2022, following a thorough colloquy, Wynder entered an open guilty plea to 14 of the 72 counts charged. On January 9, 2023, Judge Rothstein sentenced Wynder to an aggregate sentence of 12 to 24 years' imprisonment.

Following sentencing, Wynder learned of a federal civil rights lawsuit, filed in December 2020, against Trooper Betancourt in an unrelated matter. Wynder filed a timely post-sentence motion to withdraw his guilty plea. The trial court held a hearing and, on January 27, 2023, the court denied Wynder's post-sentence motion.

Wynder filed this timely appeal. Both Wynder and the trial court have complied with Pa.R.A.P. 1925. Wynder raises the following issues:

1. Whether [Wynder's] plea was knowing, intelligent, and voluntary when it was based on inaccurate information presented during negotiations?

2. Whether the trial court erred in not allowing [Wynder] to withdraw his plea of guilty and proceed to trial upon the discovery of new information regarding the credibility of the affiant?

---

(1) A second or subsequent violation of this section shall be a felony of the second degree. A person who at the time of sentencing has been convicted of another offense under this section shall be sentenced to a mandatory minimum sentence of imprisonment of five years. A second or subsequent offense shall also result in permanent revocation of any license to sell, import[,] or manufacture a firearm.

3. Whether the trial court erred in not allowing [Wynder] to withdraw his plea of guilty and renegotiate a plea with the Commonwealth?

4. Whether the sentence imposed was proper?

Appellant's Brief, at 6 (renumbered for ease of disposition).

Wynder first argues that his guilty plea was not knowing, intelligent, or voluntary because, during plea negotiations, the Commonwealth presented "inaccurate information regarding a potential maximum sentence" and because the information he later learned regarding the federal lawsuit would have affected his decision regarding whether to go to trial. *Id.* at 9. He also claims the federal lawsuit against Trooper Betancourt "may have significantly impacted the credibility of" Trooper Betancourt and, had Wynder gone to trial, a jury may not have credited Trooper Betancourt's testimony. *Id.* Next, Wynder argues the court erred in refusing his request to withdraw the plea and renegotiate with the Commonwealth. *Id.* at 10. Finally, Wynder contends that, considering the totality of the circumstances, his sentence was unjustly harsh. *Id.* at 9.

> It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court. Although no absolute right to withdraw a guilty plea exists in Pennsylvania, the standard applied differs depending on whether the defendant seeks to withdraw the plea before or after sentencing. When a defendant seeks to withdraw a plea after sentencing, he must demonstrate prejudice on the order of manifest injustice. [A] defendant may withdraw his guilty plea after sentencing only where necessary to correct manifest injustice.

* * *

- 5 -

> Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise.

*Commonwealth v. Hart*, 174 A.3d 660, 664–65 (Pa. Super. 2017) (internal citations and quotation marks omitted). The law imposes a stricter standard for post-sentence withdrawal motions in order to balance "the tension . . . between the individual's fundamental right to a trial and the need for finality in the proceedings." *Commonwealth v. Gunter*, 771 A.2d 767 (Pa. 2001); *Commonwealth v. Hvizda*, 116 A.3d 1103, 1106 (Pa. 2015).

Additionally, "a defendant is bound by the statements [that] he makes during his plea colloquy." *Commonwealth v. Barnes*, 687 A.2d 1163, 1167 (Pa. Super. 1996) (citations omitted). Therefore, a defendant "may not assert grounds for withdrawing the plea that contradict statements made when he pled guilty," and he may not recant the representations he made in court when he entered his guilty plea. *Id.* (citation omitted). Moreover, the law does not require that a defendant be pleased with the outcome of his decision to plead guilty. The law requires only that a defendant's decision to plead guilty be made knowingly, voluntarily, and intelligently. *See Commonwealth v. Moser*, 921 A.2d 526, 528–29 (Pa. Super. 2007).

Here, Wynder's claim that the Commonwealth presented inaccurate information, in that the sentence imposed exceeded that discussed during negotiations, is belied by the record. The Commonwealth presented two plea

offers, a negotiated plea for 10 to 20 years, and an open plea, wherein the Commonwealth agreed to *nolle prosse* 58 counts and agreed "to a cap of no more than 14 through 28 years as the aggregate sentence." N.T. Guilty Plea Colloquy, 9/16/22, at 19. Wynder acknowledged the terms of both offers. He rejected the negotiated plea and agreed to the open plea, acknowledging that he understood his maximum exposure. *Id.* at 17-18. He also acknowledged that an open plea carried no agreement regarding sentencing. *See* N.T. Final Trial Conference, 9/9/22, at 6 (defense counsel stating: "Her Honor could run [the sentences] consecutive, run them concurrent . . . [a]nd with respect to the mandatory minimums on counts 38, 39, and 40, Her Honor could stack them, which means five to ten times three, so 15-30 years on mandatory minimums alone."). While represented by counsel, Wynder clearly stated that he entered into the plea agreement knowingly and voluntarily, and Judge Rothstein confirmed as much at the conclusion of the oral plea colloquy. *See* Guilty Plea Colloquy, *supra* at 21-22. Judge Rothstein found no manifest injustice, and we find no abuse of discretion. *Hart*, *supra*.

With respect to his remaining issues, after consideration of Wynder's arguments on appeal, the record, and the relevant law, we conclude these issues have been comprehensively addressed by Judge Rothstein.[11] We,

---

[11] With respect to Wynder's challenge to the discretionary aspects of his sentence, we note that Wynder has failed to include in his brief a Pa.R.A.P. 2119(f) statement. However, it is well-established that when an appellant fails to include a Rule 2119(f) statement and the Commonwealth has not
*(Footnote Continued Next Page)*

therefore, rely on her opinion to affirm Wynder's judgment of sentence. ***See***

Trial Court Opinion, 5/23/23, at 4-21. The parties are directed to attach a

copy of Judge Rothstein's opinion in the event of further proceedings.

Judgment of sentence affirmed

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2023

---

objected, we may ignore the omission. ***See Commonwealth v. Kiesel***, 854 A.2d 530, 533 (Pa. Super. 2004). Here, the Commonwealth has not filed a brief, and we find no other filing in the record documenting an objection to Wynder's failure to include a Rule 2119(f) statement in his brief. Nonetheless, Wynder has failed to establish Judge Rothstein abused her discretion in sentencing, and we rely on her opinion to affirm same. ***See*** Trial Court Opinion, 5/23/23, at 15-21.

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | Common Pleas Court No.: |
| | : | CP-46-CR-0002749-2021 |
| v. | : | |
| | : | |
| | : | Superior Court No.: |
| TAYE MAURICE WYNDER | : | 619 EDA 2023 |

## OPINION

**ROTHSTEIN, J.**                                                                    **May 23, 2023**

Appellant, Taye Maurice Wynder, ("Defendant") appeals his judgment of sentence imposed on January 9, 2023, following an open guilty plea in which Defendant pled guilty to one (1) count of corrupt organizations, two (2) counts of dealing in proceeds of unlawful activities, four (4) counts of selling firearms to an ineligible transferee, one (1) count of criminal conspiracy – selling firearms to an ineligible transferee, four (4) counts of persons not to possess, use, manufacture, control, sell or transfer firearms, one (1) count of resisting arrest and one (1) count of criminal use of a communication facility.[1]  For the reasons that follow, the judgment of sentence is proper and should be affirmed.

## FACTS AND PROCEDURAL HISTORY

Between June of 2019 and December of 2020, Defendant was an active member of a gun trafficking organization which operated in multiple counties, including Montgomery County, PA.  This organization, which consisted of fourteen (14) individuals, purchased and sold firearms through the use of straw purchases.  Specifically, members of this organization, most of whom were prohibited from purchasing firearms due to criminal backgrounds, would recruit individuals with clean criminal records to purchase firearms on their behalf.  The members of the gun trafficking organization would instruct the straw purchasers as to which firearms to purchase and the straw purchaser would subsequently falsify the required

---

[1] 18 Pa.C.S.A. §§ 911(b)(2), 5111(a)(2), 6111, 903(a)(1), 6105(a)(1), 5104 and 7512(a) respectively.

state and federal paperwork by certifying that he or she was the actual buyer of the firearm, even though the firearm would be always be transferred to a member of the organization.

Defendant served as middle man and recipient in this organization and received at least four (4) firearms as the result of straw purchases. Typically, Defendant would provide the money to the straw purchaser which covered the cost of the firearm purchase and required background check. Defendant would also instruct the straw purchaser to lie on the paperwork and later took possession of the firearm following the straw purchase. On at least two (2) occasions, Defendant was present in the parking lot of the gun store or firearms dealer's business while waiting for the straw purchaser to exit the business with the newly purchased firearms. The purchasers subsequently transferred the firearms to Defendant. To date, only one (1) of these firearms has been recovered. During his time as a member of this organization, Defendant was under the legal age to purchase a firearm in Pennsylvania and was also statutorily prohibited from possessing, using or purchasing a firearm based on his prior juvenile adjudication for robbery.

On December 12, 2020, Defendant was a passenger in a vehicle which was subjected to a traffic stop by the Pennsylvania State Police. During the course of the stop, Defendant fled from authorities and Trooper Seth Betancourt engaged in a foot pursuit in which he eventually apprehended Defendant. Another trooper performed a pat down of Defendant's person and found a handgun which had been purchased by a straw purchaser utilized by Defendant only four (4) days prior. Defendant has been in custody from the date of this arrest.

On April 26, 2022, the Commonwealth filed a notice of intent to seek mandatory sentences with respect to, *inter alia*, three (3) of Defendant's selling firearms to an ineligible transferee charges pursuant to 18 Pa.C.S.A. § 6111(h)(1). Specifically, the Commonwealth contended that each of these counts were subject to a mandatory minimum sentence of at least five (5) years of total confinement under Section 6111(h)(1). Defendant did not object to the imposition of the mandatory minimum sentences. On August 29, 2022, Defendant filed a Motion for Suppression of Evidence related to the December 12, 2020 traffic

2

stop. On September 8, 2022, following a hearing in which Trooper Betancourt testified, the court denied Defendant's suppression motion.

On September 16, 2022, Defendant entered an open guilty plea to the charges referenced above. As part of the guilty plea, the parties agreed that the maximum aggregate sentence would be capped at fourteen (14) to twenty-eight (28) years of imprisonment. On January 9, 2023, the court imposed an aggregate sentence of one-hundred and forty-four (144) to two-hundred and eighty-eight (288) months of imprisonment (twelve (12) to twenty-four (24) years).[2] Following sentencing, Defendant learned of a federal lawsuit which had been filed against Trooper Betancourt in an unrelated matter.[3] The lawsuit had been filed in December of 2020, and raised causes of action based upon, *inter alia*, civil rights violations under Section 1983.[4] On January 18, 2023, Defendant filed timely post-sentence motions in which he requested to withdraw his guilty plea due to this after-discovered evidence.[5] On January 27, 2023, following a hearing, the court denied Defendant's post-sentence motions.

On February 24, 2023, Defendant filed a timely notice of appeal. On February 28, 2023, the court issued an Order directing Defendant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) (the "Concise Statement") within twenty-one (21) days. On March 17, 2023, Defendant filed a timely Concise Statement. In his Concise Statement, Defendant raises the following four (4) issues:

> WHETHER DEFENDANT'S PLEA WAS KNOWING, INTELLIGENT, AND VOLUNTARY WHEN IT WAS BASED ON INACCURATE INFORMATION PRESENTED DURING NEGOTIATIONS?

---

[2] Part of this sentence included mandatory minimum sentences of sixty (60) to one hundred and twenty (120) months of imprisonment with respect to three (3) of the selling firearms to ineligible transferee charges. As detailed *infra,* the court ran two (2) of these sentences consecutive and ran the last one concurrent.

[3] The lawsuit was filed in the Eastern District of Pennsylvania.

[4] 42 U.S.C.A. § 1983.

[5] In his post-sentence motions, Defendant also requested to withdraw his guilty plea based on his assertion that he would have accepted a negotiated guilty plea if there was any indication that his sentence would exceed the terms discussed during plea negotiations.

3

WHETHER THE COURT ERRED IN NOT ALLOWING DEFENDANT TO WITHDRAW HIS PLEA OF GUILTY AND PROCEED TO TRIAL UPON THE DISCOVERY OF NEW INFORMATION REGARDING THE CREDIBILITY OF THE AFFIANT?

WHETHER THE COURT ERRED IN NOT ALLOWING DEFENDANT TO WITHDRAW HIS PLEA OF GUILTY AND RENEGOTIATE A PLEA WITH THE COMMONWEALTH?[6]

WHETHER THE SENTENCE IMPOSED WAS PROPER?[7]

(Defendant's Concise Statement).

## DISCUSSION

### I. EFFECT OF ALLEGEDLY INACCURATE INFORMATION PRESENTED DURING GUILTY PLEA NEGOTIATIONS

In his first issue, Defendant alleges that the defense had an understanding, based upon negotiations and conversations between the parties, that his open guilty plea would result in a considerably lower sentence than the one he actually received. Defendant acknowledges that these negotiations and discussions were not promises, but asserts that the sentence imposed was beyond the scope of what the parties had discussed. Defendant contends that he would have likely accepted a negotiated guilty plea if there was any indication that his sentence would have exceeded the terms discussed during plea negotiations. Defendant concludes these factors rendered his guilty plea as unknowing, unintelligent and involuntary and he was therefore permitted to withdraw his plea.

"In order to permit the withdrawal of a guilty plea after sentence has been entered, there must be a showing of prejudice that results in a manifest injustice to the defendant." *Commonwealth v. Vance*, 546 A.2d 632, 635 (Pa.Super. 1988), *appeal denied*, 521 Pa. 620, 557 A.2d 723 (1989) (internal citation omitted). "To prove manifest injustice, a criminal defendant must show that his plea was involuntary or

---

[6] For ease of disposition, this court will address Defendant's second and third issues together.

[7] For ease of disposition this court has reordered the issues raised in the Concise Statement. Specifically, the second issue raised in the Concise Statement appears as the fourth issue raised in this opinion and the third and fourth issues raised in the Concise Statement appear respectively as the second and third issues raised in this opinion.

4

was entered without knowledge of the charge." *Commonwealth v. Fenton*, 566 A.2d 260, 262 (Pa.Super. 1989), *appeal denied*, 525 Pa. 662, 583 A.2d 792 (1990) (internal citation omitted). "Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." *Commonwealth v. West*, 485 A.2d 490, 493 (Pa.Super. 1984) (internal citation omitted). "Post-sentencing attempts to withdraw a guilty plea must sustain this more substantial burden of demonstrating manifest injustice because of the recognition that a plea withdrawal can be used as a sentence-testing device." *Commonwealth v. Muntz*, 630 A.2d 51, 53 (Pa.Super. 1993) (internal citation omitted). "It is axiomatic that a disappointed expectation regarding a sentence entered does not constitute grounds for withdrawing a guilty plea." *Commonwealth v. Owens*, 467 A.2d 1159, 1163 (Pa.Super. 1983). "If a plea of guilty could be retracted with ease after sentencing, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe." *Commonwealth v. Shaffer*, 498 Pa. 342, 346, 446 A.2d 591, 593 (1982).

Instantly, the court conducted a final trial conference on September 9, 2022 (the "Final Pre-Trial Conference") in which the judge left the courtroom and directed the Commonwealth to place its offer to Defendant on the record as well as the maximum exposure he faced with respect to each count.[8] During this portion of the conference, the Commonwealth placed two (2) alternative plea offers on the record, one of which involved the entry of an open guilty plea and another involving the entry of a negotiated guilty plea:

> [PROSECUTOR]:  All right. So there were two offers that were conveyed. One was originally conveyed in October of last year, and that was a negotiated plea. Okay?
>
> *.........*.........*
>
> **[S]o the total time on the negotiated plea is for ten to 20 years. Do you understand that?**

---

[8] The court also directed Defendant to be sworn in for purposes of the Commonwealth's presentation of its offer.

5

| | |
|---|---|
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | Okay. I did make an open plea offer to your attorney, so [counsel] has that, but that included counts 1 through 3 of corrupt organizations…counts 12 and 13, dealing in unlawful proceeds…count 36, illegal transfer of a firearm…counts 38 through 40, second or subsequent illegal transfers of firearms…and those carry mandatory minimums, and I did file notice on those. |
| | Count 52 through 58, person not to possess a firearm…count 66, possession of a firearm with an obliterated serial number…count 67, resisting arrest…and count 72, criminal use of a communication facility…Do you understand that? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | **Okay. With an open plea, there's no agreement regarding sentencing, so Her Honor could run them consecutive, run them concurrent, but because of the mandatory minimum, you'd be looking at a minimum of five to ten years. Do you understand that?** |
| [DEFENDANT]: | **Yes.** |
| [PROSECUTOR]: | **Okay. And with respect to the mandatory minimums on counts 38, 39, and 40, Her Honor could stack them, which means five to ten times three, so 15 to 30 years on mandatory minimums alone. Do you understand that?** |
| [DEFENDANT]: | **Yes.** |

(N.T. Final Trial Conference, 9/9/22, at 4-6) (emphasis added). Following this exchange, the judge returned to the courtroom to colloquy Defendant as to how he wished to proceed:[9]

| | |
|---|---|
| THE COURT: | [Defendant], are you under the influence of any drugs or alcohol today? |
| [DEFENDANT]: | No. |

[9] Defendant remained under oath for purposes of the colloquy.

6

| | |
|---|---|
| THE COURT: | Are you taking any medication that would interfere with your ability to understand what's going on here today? |
| [DEFENDANT]: | No. |
| THE COURT: | Are you being treated for any medical or mental health condition that would interfere with your ability to understand what's going on today? |
| [DEFENDANT]: | No. |
| THE COURT: | All right. When I left the courtroom – again, I don't want to know the offer – did the Commonwealth place on the record a plea offer? |
| [DEFENDANT]: | Yes. |
| THE COURT: | Did you hear the offer? |
| [DEFENDANT]: | Yes. |
| THE COURT: | Did you understand the offer? |
| [DEFENDANT]: | Yes. |
| THE COURT: | Did they also put on the record what the maximum exposure on the charges are if you're convicted of any of the charges? |
| [DEFENDANT]: | Yes. |
| THE COURT: | Were [all] of your questions answered? |
| [DEFENDANT]: | I didn't ask any questions. |
| THE COURT: | Okay. So you didn't have any questions? |
| [DEFENDANT]: | No. |
| THE COURT: | Okay. What is the deadline for the offer to be accepted? |
| [PROSECUTOR]: | Monday the 12th at four p.m. |
| THE COURT: | You understand that if you don't accept the offer – again, you don't have to, but if you |

7

don't accept the offer by Monday at four p.m., that the offer is withdrawn?

[DEFENDANT]: Yes.

THE COURT: Okay. You understand as a defendant in a criminal case, you have an absolute right to accept a plea offer with an agreement?

[DEFENDANT]: Yes.

THE COURT: Do you understand that as a defendant in a criminal case, you have an absolute right to plead open and then I would be the one who would sentence you?

[DEFENDANT]: Yes.

THE COURT: And do you understand that as a defendant in a criminal case, you have an absolute right to a jury trial?

[DEFENDANT]: Yes.

THE COURT: And at this point, a jury trial is scheduled to commence next Friday. Do you understand that?

[DEFENDANT]: Yes.

THE COURT: Okay. You understand that if you are convicted that I could – I would be the one who would sentence you?

[DEFENDANT]: Yes.

THE COURT: And I could sentence you up to your maximum exposure on any charges you're convicted of?

[DEFENDANT]: Yes.

THE COURT: **And do you understand that if you're convicted and I sentence you, the sentence could be significantly greater than the plea offer?**

[DEFENDANT]: **Yes.**

8

| | |
|---|---|
| THE COURT: | Knowing this, is it still your intent today to reject the offer? |
| [DEFENDANT]: | Yes. |
| THE COURT: | All right. Has anyone forced you to reject the offer? |
| [DEFENDANT]: | No. |
| THE COURT: | Has anyone made any promises to get you to reject the offer? |
| [DEFENDANT]: | No. |
| THE COURT: | Do you understand that while you're rejecting it today, you still have until four p.m. on Monday to accept the offer and your attorney would have to communicate that to the ADA prior to that point in time? |
| [DEFENDANT]: | Yes. |
| THE COURT: | Okay. Do you have any questions? |
| [DEFENDANT]: | No. |

(*Id.* at 9-12) (emphasis added). Ultimately, Defendant chose to enter an open guilty plea on the morning of the scheduled jury trial. As a condition of the open guilty plea, the parties agreed that the maximum aggregate sentence would be capped at fourteen (14) to twenty-eight (28) years of imprisonment. At the open guilty plea proceeding, the court administered a guilty plea colloquy in which it reviewed the terms of the plea with Defendant:

| | |
|---|---|
| THE COURT: | All right. Sir, you understand that you're entering into an agreement with the Commonwealth today? |
| [DEFENDANT]: | Yes. |
| THE COURT: | All right. And it's really a contract. Do you understand that? |
| [DEFENDANT]: | Yes. |
| THE COURT: | All right. And what the terms of the contract are, in exchange for your pleading |

9

|  |  |
|---|---|
|  | to count 1, count 12, count 13, count 36, 37, 38, 39, 40, 52 through 55, and 67 and 72, the Commonwealth is giving you something in exchange for that.

They're agreeing to nol pros or dismiss counts 2 through 11, 14 through 35, 41 through 51, 56 through 66, and 68 through 71, and they're agreeing to a cap of no more than 14 through 28 years as the aggregate sentence. Do you understand that? |
| [DEFENDANT]: | Yes. |
| THE COURT: | So what that means is, that means when I come in to sentence you, the Commonwealth can't come in and ask me to sentence you on any of the charges that they today are agreeing to dismiss. Do you understand that? |
| [DEFENDANT]: | Yes. |
| THE COURT: | It also means that the Commonwealth can't ask for more than 14 to 28 years because today, as part of this contract, they're agreeing to that cap. Do you understand that? |
| [DEFENDANT]: | Yes. |

\*………\*………\*

|  |  |
|---|---|
| THE COURT: | Has anyone – is this your decision and your decision alone to enter into this agreement today? |
| [DEFENDANT]: | Yes. |
| THE COURT: | Has anyone forced or threatened or coerced you into entering the open plea? |
| [DEFENDANT]: | No. |
| THE COURT: | You understand you have an absolute right to a jury trial, and we have a jury waiting, correct? |
| [DEFENDANT]: | Yes. |

10

| | |
|---|---|
| THE COURT: | And you have an absolute right to plead. Do you understand that? |
| [DEFENDANT]: | Yes. |
| THE COURT: | And it's your decision and your decision alone today to plead open? |
| [DEFENDANT]: | Yes. |
| THE COURT: | And you understand that once I accept the plea, you can't just change your mind absent a showing of manifest injustice. Do you understand that? |
| [DEFENDANT]: | Yes. |

(N.T. Open Guilty Plea, 9/16/22, at 19-21).

It is unclear exactly what Defendant is alleging the Commonwealth promised during plea negotiations. Nothing was placed on the record at the Final Pre-Trial Conference or at the open guilty plea proceeding with respect to any recommendations or agreements except for the understanding that the maximum aggregate sentence would be capped at fourteen (14) to twenty-eight (28) years of imprisonment. The court honored this agreement and, in fact, issued a sentence which was two (2) years lower than the agreed upon cap. Although Defendant may have contemplated a sentence significantly below the actual sentence imposed, there were no terms inserted as a condition of the plea which would have ensured this result. Defendant chose to take a calculated risk that the entry of an open guilty plea would result in a more favorable sentence than the terms of the negotiated guilty plea with full knowledge of his potential exposure, including the mandatory minimum sentences involved. Ultimately this course of action had an adverse result. However, Defendant's unhappiness with the sentence is simply subjective remorse which cannot serve as a basis for the withdrawal of his guilty plea. Allowing for Defendant to withdraw his guilty plea in this situation would permit precisely the kind of "sentence-testing" which has been expressly condemned. *See Owens, supra*; *Shaffer, supra*.

Accordingly, Defendant's first issue merits no relief.

11

## II. AND III. DENIAL OF REQUEST TO WITHDRAW GUILTY PLEA ON THE BASIS OF AFTER-DISCOVERED EVIDENCE CLAIM

In his second and third issues combined, Defendant contends that the federal lawsuit filed against Trooper Seth Betancourt in December of 2020 called into question the trooper's credibility with respect to his testimony at the suppression hearing. Defendant insists he was not aware of the existence of this information until sentencing had already been completed, and the absence of this information at the time of the guilty plea rendered Defendant's plea as unknowing, unintelligent and involuntary. Defendant concludes that in light of the discovery of this information, he was permitted to withdraw his plea and proceed to trial or, in the alternative, renegotiate his plea with the Commonwealth or have the court reconsider his sentence.

"[A]ny after-discovered evidence which would justify a new trial would also entitle a defendant to withdraw his guilty plea [after sentencing]." *Commonwealth v. Peoples*, 456 Pa. 274, 275, 319 A.2d 679, 681 (1974). "To be granted a new trial on the basis of after-discovered evidence, a defendant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa.Super. 2010), *appeal denied*, 609 Pa. 687, 14 A.3d 326 (2010) (internal citations omitted).

Instantly, on December 12, 2020, Defendant was a passenger in a vehicle which was subjected to a traffic stop by the Pennsylvania State Police. (N.T. Motion to Suppress and Spoliation Motion, 9/1/22, at 18). Trooper Betancourt was not driving the patrol car and did not initiate the stop. (*Id.* at 18, 136). During the course of the stop, Defendant fled from authorities and Trooper Betancourt engaged in a foot pursuit in which he eventually apprehended Defendant and brought him back to the scene of the traffic stop. (*Id.* at 131-32). Upon Defendant's return to the scene, another trooper performed a pat down of Defendant's person and found a handgun. (*Id.* at 133, 154-55). Authorities subsequently performed an inventory search of the vehicle, but Trooper Betancourt did not take part in this search. (*Id.* at 145, 153). Trooper Betancourt

12

also did not observe any of the items which were recovered during the inventory search, nor did he observe any objects in plain view during his initial interaction with the occupants of the vehicle. (*Id.* at 138-39, 145-46). The affidavit of probable cause detailing this incident was not signed by Trooper Betancourt, nor did he serve as the affiant during the suppression hearing. (*Id.* at 83, Defense Exhibit 2).

Authorities subsequently executed several search warrants related to Defendant's Instagram accounts, DNA and cell phone records. Defendant later filed a Motion for Suppression of Evidence related to the traffic stop in which he contended that authorities did not possess probable cause or the requisite exigent circumstances in which to effectuate a warrantless search of the vehicle or Defendant's person and any items recovered as a result of the stop should have been suppressed. Defendant further asserted that any information obtained as a result of the search warrants executed following Defendant's arrest should have been suppressed as "fruit of the poisonous tree." Following a hearing in which Trooper Betancourt testified, the court denied Defendant's suppression motion.

Sometime after sentencing, Defendant learned of a federal lawsuit which had been filed against Trooper Betancourt in an unrelated matter. The lawsuit had been filed in December of 2020, and raised causes of action based upon, *inter alia*, civil rights violations under Section 1983. (N.T. Defendant's Motion to Withdraw Guilty Plea/Motion for Reconsideration of Sentence, 1/27/23, at 6-7, Defense Exhibit 1). Specifically, the lawsuit alleged that Trooper Betancourt arrested the lawsuit's plaintiff (Patrice Bracey) without any probable cause following an incident in which the trooper believed Ms. Bracey had stolen a vehicle from a car dealership. (*Id.*). Ms. Bracey contended that the facts demonstrated her boyfriend was the one who had likely stolen the vehicle. (*Id.*). Ms. Bracey cited to evidence which demonstrated she had no role in this theft or knowledge of her boyfriend's actions, including video surveillance evidence which revealed that she had never entered the car dealership. (*Id.*). Ms. Bracey averred that despite the existence of this evidence, Trooper Betancourt made no effort to exonerate Ms. Bracey for her role in the theft, and she remained imprisoned for over one (1) month. (*Id.*). Ms. Bracey highlighted how several months later, all charges were dismissed after Trooper Betancourt conceded that Ms. Bracey had no role in the vehicle

13

theft. (*Id.*). Trooper Betancourt moved for summary judgment with respect to the lawsuit, which the federal court denied. (*Id.* at 15-16, Judicial Exhibit 3). Eventually, the parties agreed to an out of court settlement in which there was no acknowledgement of wrongdoing. (*Id.* at 16, Judicial Exhibit 4).

The existence of this lawsuit fails to constitute after-discovered evidence which would entitle Defendant to withdraw his guilty plea after sentencing. Defendant could have easily obtained this information with reasonable diligence prior to the suppression hearing, guilty plea and sentencing. *See Padillas, supra.* In fact, a Google search performed by the court revealed that the lawsuit was prominently displayed in search results, and could have been discovered if Defendant had performed such a search. (*Id.* at 14-15, Judicial Exhibit 2). Additionally, based upon the facts and procedural posture of the federal lawsuit, the court would not have allowed any evidence associated with the suit to be introduced in during the suppression hearing due to its lack of relevance. Moreover, even if this evidence was admissible, it would have had minimal impact upon the court's consideration of Defendant's motion to suppress. As discussed *supra*, Trooper Betancourt had an exceedingly minor role as it related to the traffic stop. Essentially, the trooper's participation in the traffic stop was limited to apprehending Defendant after he fled. Trooper Betancourt did not make the decision to initiate the traffic stop, nor did he participate in the inventory search of the vehicle. To the extent that Defendant claims the allegations within the federal lawsuit would assist in impeaching the trooper's credibility, this alone cannot serve as the only basis for allowing the withdraw of a guilty plea. *See Padillas, supra.*

Additionally, the averments within the federal lawsuit were not fully adjudicated and, towards this end, could not be utilized to impeach Trooper Betancourt's credibility. As referenced *supra*, the federal lawsuit ended with an out-of-court settlement in which there was no acknowledgement of any wrongdoing. Although the federal court's opinion denying the trooper's motion for summary judgment appeared to claim that he did not possess probable cause to effectuate the arrest of Ms. Bracey; this opinion examined the evidence under a relaxed summary judgment standard which looks at the facts in a light most favorable to the non-moving party. During the adjudication of a summary judgment motion, a court only seeks to

14

determine if there is no genuine issue of material fact. In the lawsuit, the federal court found there was a general issue of material fact, but such a determination did not constitute a finding that Trooper Betancourt committed any wrongdoing. Thus, the allegations contained within the federal lawsuit would not have necessitated a reversal of the court's denial of Defendant's motion to suppress.

Consequently, the court did not abuse its discretion in refusing to allow Defendant to withdraw his guilty plea and proceed to trial or renegotiate a plea with the Commonwealth based upon his after-discovered evidence claim. Accordingly, Defendant's second and third issues merit no relief.

## IV. DISCRETIONARY ASPECTS OF SENTENCE

In his fourth issue, Defendant contends his aggregate sentence was unfairly harsh and excessive and the court failed to adequately consider any mitigating sentencing factors.

The standard of review with respect to sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgement. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999) (*en banc*) (internal quotation marks and citations omitted). "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of the offense in relation to impact on victim and community, and rehabilitative needs of the defendant...." *Commonwealth v. Fullin*, 892 A.2d 843 (Pa.Super. 2006) (internal citations omitted). "When reviewing sentencing matters, [the Superior Court] must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa.Super. 2009), *appeal denied*, 604 Pa. 706, 975 A.2d 1128 (2009).

A claim that a sentence is manifestly excessive challenges the discretionary aspects of sentencing. *Commonwealth v. Hoag*, 665 A.2d 1212 (Pa.Super. 1995). "[T]here is no absolute right to appeal when

challenging the discretionary aspect of a sentence." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*). To properly preserve such a claim for appellate review, the defendant must present the issue in either a post-sentence motion or raise the claim during the sentencing proceedings. *Id.* "Absent such efforts, an objection to a discretionary aspect of sentence is waived." *Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa.Super. 2003). This failure cannot be cured by submitting the challenge in a Rule 1925(b) statement. *Id.* Here, Defendant raised the discretionary aspects of sentencing claim in his post-sentence motions, thus the issue is preserved on appeal.

To obtain review on the merits of a challenge to the discretionary aspects of a sentence, a defendant must include a Pa.R.A.P. 2119(f) statement in his brief and he must show that there is a substantial question that the sentence imposed is not appropriate under the sentencing code (42 Pa.C.S. § 9781(b).) *Commonwealth v. Raven*, 97 A.3d 1244, 1252 (Pa.Super. 2014) *appeal denied* 629 Pa. 636, 105 A.3d 736 (2014). "A substantial question requires a showing that the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Id.* (internal citations and quotation marks omitted).

A sentencing court has discretion to impose multiple sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa.Super. 2006) (*see also Hoag, supra* at 1214, holding that defendant is not entitled to "volume discount" for his crimes by having his sentences run concurrently). The imposition of consecutive, rather than concurrent sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of the imprisonment. *Pass, supra* at 446-47. A challenge to the aggregation of many standard range sentences resulting in an overall sentence which is "so manifestly excessive as to constitute too severe a punishment" raises a substantial question. *Commonwealth v. Dodge*, 859 A.2d 771, 776 (Pa.Super. 2004). Generally, an allegation that the sentencing court failed to consider or did not adequately consider certain mitigating factors does not raise a substantial question that the sentence was inappropriate. *Commonwealth*

16

*v. Lewis*, 911 A.2d 558, 567 (Pa.Super. 2006). *See also Commonwealth v. Mobley*, 581 A.2d 949, 952 (Pa.Super. 1990) (holding claim that sentencing court failed to take into consideration defendant's rehabilitative needs and issued manifestly excessive sentence did not raise substantial question where sentence was within statutory limit and sentencing guidelines).

"[W]here a sentence is within the standard range of the [sentencing] guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super. 2010). "Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Id.* (internal citation omitted). A combination of a PSI and a standard range sentence, absent more, cannot be considered excessive and unreasonable. *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 *appeal denied* 544 Pa. 653, 676 A.2d 1195 (1996).

As a preliminary matter, Defendant's issues presented in his concise statement potentially raise substantial questions warranting review. *See Dodge, supra*. To the extent Defendant has raised or will raise substantial questions, he is still not entitled to relief. Instantly, Defendant's aggregate sentence of twelve (12) to twenty-four (24) years of imprisonment consists of mandatory minimum sentences of five (5) to ten (10) years of imprisonment with respect to two (2) of the selling firearms to an ineligible transferee charges[10] and a low-end standard range sentence of twenty-four (24) to forty-eight (48) months of imprisonment with respect to one (1) persons not to possess, use, manufacture, control, sell or transfer firearms charge. The court ran all of the other counts concurrent. The aggregate sentence was also two (2) years less than the parties' agreed maximum aggregate cap of fourteen (14) to twenty-eight (28) years of

---

[10] Pursuant to 18 Pa.C.S.A. § 6111(h)(1), the court was obligated to sentence Defendant to mandatory minimum sentences of at least five (5) years of total confinement for three (3) of the selling firearms to ineligible transferee convictions due to the fact that they were second and subsequent violations of this statute. The only discretion the court possessed was whether to run these sentences consecutive or concurrent. Ultimately, the court ran two (2) of these sentences consecutive and ran the last one concurrent.

17

imprisonment. Thus, to the extent Defendant contends the individual component sentences of his aggregate sentence are excessive and unreasonable, this claim has no merit. *See Moury, supra.*

The court also had the benefit of a PSI report and considered all of the rehabilitative and mitigating factors related to Defendant contained therein. (N.T. Sentencing, 1/9/23, at 5). Additionally, the court considered all other factors required under 42 Pa.C.S.A. § 9721(b), such as the sentencing guidelines. (*Id.*). The court also had the benefit of sentencing memorandum prepared by the Commonwealth and defense counsel. (*Id.*). The sentencing memorandum prepared by defense counsel described how Defendant has been shot twice, and suffers from ADHD and possibly PTSD. (Defendant's Sentencing Memorandum at 3). Defendant's mother also offered testimony at the sentencing hearing which detailed Defendant's PTSD issues. (N.T. Sentencing, 1/9/23, at 26). Therefore, the record indicates the court was aware of relevant information regarding Defendant's character, including mitigating factors, and weighed this information when it imposed sentence. *See Moury, supra.*

Defendant was a key member of a gun trafficking organization which was responsible for placing multiple illegal guns onto the street. During his time in this organization, Defendant received at least four (4) firearms as the result of straw purchases. Defendant's involvement in these actions demonstrated a dangerous level of sophistication and knowledge of the straw purchase system. The court referenced these details and other factors in its reasoning for the sentence it imposed:

THE COURT: The charges you were convicted of relate directly or indirectly to a straw purchase – to straw purchases of firearms.

On September 13, 2012, Plymouth Township Police Officer Brad Fox was murdered in the line of duty by a convicted felon, Andrew Thomas. This happened while Officer Fox was pursuing Thomas for a hit-and-run accident. Thomas was a person not to possess. That means he was not legally able to purchase a firearm. However, Thomas was able to obtain a firearm.

You might ask how that occurred. Well, it happened through a straw purchase. A straw purchase is when someone who is not legally

18

allowed to possess or purchase a gun gets another person to buy the gun for them.

In the case of Officer Fox, that person was Michael Henry. He bought multiple firearms and provided at least one to Andrew Thomas. That was the firearm that was used to kill Officer Brad Fox.

This tragedy led to the passage of an enhanced sentencing law, which is referred to as the Brad Fox Law. As to any second or subsequent offense, the offender, if convicted, is subject to a mandatory five-year sentence.

Today, despite the passage of the Brad Fox Law, straw purchases are still a major problem in our community. Criminal enterprises exist for the sole purpose of supplying firearms to people who are convicted felons and not permitted to have firearms.

There are multiple members of these criminal enterprises. First are the people who cannot legally possess or purchase a firearm; second, the people who facilitate the purchases and the sales; third are the people who go to the gun shops and purchase the firearms.

The initial purchasers are legally able to purchase the firearms since they are 21 or older, have no criminal record which would prevent them from purchasing a firearm. Those purchasers lie on their applications purchase since they state under oath that the gun is being purchased for personal use.

After the purchase, there is a delivery of the firearm to others in the enterprise. Typically, they obliterate the serial number on the firearm so it cannot be traced to who purchased it.

Now you have multiple guns on the street that are used in all types of violent crimes. Those crimes include homicides, aggravated assaults, robberies, carjackings, et cetera.

But for the straw purchase, those weapons would not be on the street contributing to multiple violent offenses. Straw purchases lead to more violent crime, lead to deaths, and inhibit law enforcement from investigating those crimes.

19

You were part of that criminal enterprise. Your role was as a middleman between the two organizations, facilitator, recruiter, and/or recipient of at least four firearms. As a result, you were an integral part of the organization.

While one of the four firearms was recovered, three are still out there on the street. We do not know how many violent crimes have been committed and will be committed as a result of your involvement in those guns still being on the street.

Unfortunately, at your young age, your contact with the criminal justice system has been lengthy. You knew you were a person not permitted to possess a firearm. However, that did not stop you from obtaining and possessing a firearm and participating in the criminal enterprise to allow others who were also not permitted to possess firearms. You single-handedly allowed criminals who were not allowed to possess firearms to possess them.

Unfortunately, there [are] no redeeming qualities in that conduct. This was not a mistake in judgment. This was premeditated. You, along with others, designed a plan for you and others to get access to guns when you knew you and others could not legally own or obtain them.

On the other hand, you did plead guilty. You admitted to your guilt and spared the criminal justice system of having to proceed with a trial. I did read your letter, and by all accounts, you are remorseful and admit that you engaged in this illegal conduct.

To your family, I have no doubt that he has been a good son and a good relative. However, at times, people do make very, very bad decisions and engage in bad conduct, and that's what happened here.

You agreed in advance to a cap of 14 to 28 years. The court takes all of this into account in fashioning an appropriate sentence.

20

(N.T. Sentencing, 1/9/23, at 42-46). The record demonstrates the court considered the magnitude of Defendant's actions and determined that, even when taking mitigating factors into account, these factors did not justify a decreased sentence in light of the severe risk inherent to Defendant's crimes. Thus, due to the serious nature of Defendant's crimes and the danger he poses to the public, Defendant cannot claim that his sentence was so manifestly excessive as to constitute an unduly harsh punishment. *See Dodge, supra*; *Pass, supra*.

Therefore, the court appropriately considered all of the factors set forth in 42 Pa.C.S.A. § 9721(b) and did not abuse its discretion when it imposed an aggregate sentence of twelve (12) to twenty-four (24) years of imprisonment. *See Rodda, supra*. Accordingly, Defendant's fourth issue merits no relief.

## CONCLUSION

For the reasons set forth above, the judgment of sentence is proper and should be affirmed.

**BY THE COURT:**

**WENDY G. ROTHSTEIN,          J.**

Copies of the above Opinion sent on May 23, 2023:
**By E-Mail To:**
 Robert Falin, Esquire/Emily Phou (District Attorney's Office)
 Jonathan Consadene, Esquire (Defense Counsel)
**By First Class Mail To:**
 Jonathan Consadene, Esquire
  Del Colllo & Mazzanti LLP, 41 Leopard Road, Suite 200, Paoli Exec. Green I, Paoli, PA 19301
 Taye Maurice Wynder (Defendant) (SCI Coal Twnship #QP5156)

Judicial Assistant

21